STATE EX REL. CARL U. NELSON v. BOARD OF PUBLIC
WELFARE OF THE CITY OF MINNEAPOLIS
AND OTHERS.[1]

June 24, 1921.

No. 22,295.

**Municipal corporation — discharge of employe — Civil Service Act.**

1. The civil service act, which applies to the city of Minneapolis, permits the officer or board that appointed an employe to discharge him, without referring the matter to the civil service commission for a hearing, unless he has been in continuous employment for six months or more.

**Discharge by Board of Public Welfare of Minneapolis.**

2. The act creating the Board of Public Welfare of the city of Minneapolis authorized the board to discharge the employes of former departments, transferred to it, without a hearing, and, insofar as this act is inconsistent with the civil service act it supersedes that act.

**Second discharge without a hearing, when.**

3. Where an employe so discharged was subsequently appointed to a different position, he may be discharged therefrom by the board without a hearing before the civil service commission, unless he has served under such new appointment for six months or more.

**Honorable discharged soldier entitled to hearing before Board of Public Welfare.**

4. The relator, being an honorably discharged soldier, was entitled to a hearing before being discharged from his position, but, as this right was not given him by the civil service act, but by the act granting preference rights to honorably discharged soldiers and sailors, and that act did not designate what tribunal should hold such hearing, the duty to hold it devolved upon the board of public welfare which appointed him, and not upon the civil service commission.

**Voluntary appearance waived a formal notice of hearing.**

5. By voluntarily appearing before the board and informing them that he had nothing further to present, the relator waived formal notice of the hearing.

[1] Reported in 183 N. W. 521.

**Concession at argument corrects omission in record.**

6. While the return fails to show that the relator was an honorably discharged soldier, it was conceded at the argument that such was the fact.

Upon the relation of Carl U. Nelson the district court of Hennepin county granted its writ of certiorari directed to the Board of Public Welfare of the City of Minneapolis to review the action of that board in discharging relator from the position of inspector of foods. The matter was heard by Dickinson, J., who granted respondents' motion to quash the writ. From the judgment entered quashing the writ, relator appealed. Affirmed.

*Neil M. Cronin* and *Orren E. Safford,* for relator.

*C. D. Gould, W. G. Compton,* and *L. B. Byard,* for respondents.

TAYLOR, C.

Alleging that he had been wrongfully discharged, on August 10, 1920, by the Board of Public Welfare of the city of Minneapolis from the position of inspector of foods in the division of public health, the relator sued out a writ of certiorari from the district court to review the action of the board. On the return made to the court in obedience to the writ, the court rendered judgment affirming the action of the board as lawful and valid and discharging the writ. The relator appealed from this judgment.

The Board of Public Welfare of the city of Minneapolis was created by chapter 327, p. 342, of the Laws of 1919, and on July 1, 1919, the powers and duties theretofore exercised and performed by the department of health and by several other departments and boards of the city were transferred to, vested in, and imposed upon, this board. Among other things the act provided that: "All officers and employes of the department of health * * * shall be eligible to similar offices and positions under the board of public welfare hereby created without being required to take civil service examinations as to their qualifications therefor, and they shall continue in their respective offices or positions from the time this act goes into effect, until further action of the board." Section 6.

From the return it appears that on June 8, 1920, the committee on public health of the board of public welfare reported to the board three lists of employes in the division of public health, and as to one of these lists recommended: "That this personnel of employes carried over as employes prior to July 1st, 1919, be not certified and that the positions now occupied by them be declared vacant June 15th, 1920, and that the commissioner of health be authorized to request the civil service commission to replace them."

This list included the relator, who was named therein as inspector of milk. The recommendation of the committee was adopted by the board. The committee also recommended that the employes in this list be given a leave of absence with pay for one week from June 15, 1920, and this recommendation was also adopted by the board. About this time, the date is not given, the board requested the civil service commission to certify an eligible person for appointment as inspector of foods in the division of public health, and on June 18, 1920, the commission certified to the board the name of the relator, and he was appointed to that position on June 23, 1920. On July 27, 1920, the commissioner of public health gave him a written notice that, pending the action of the board of public welfare, he was suspended without pay for absence from duty without authority and for falsification of reports, and, pursuant to the rules of the board, reported this action to the committee on public health. This committee reported to the board at its meeting of August 3, 1920, recommending that the relator be discharged. He appeared at this meeting and was informed by the chairman that the committee, after investigation, had recommended that he be permanently discharged, and was further informed that it had been made to appear that the statement in his written report of July 26, that he had been engaged during all the working hours of that day in performing the duties assigned to him, was false in that during those hours he had attended a hearing held by a committee of the city council which his duties did not require him to attend, and was further informed that the board desired to hear him in his own behalf and to give him such opportunity as he wished to present such facts and evidence as he desired before the board took action on the recommendation

for his discharge.   Thereupon the relator stated to the board that he had been absent from duty without leave as stated by the chairman, and that: "Said written inspection report made by him was false in that he was not wholly employed  *  *  *  on the said July 26, 1920, in and about his regular duties." He further stated that he "did not think or realize that he had been guilty of any act in grave violation of his duties and that he had nothing further to say and present to the board at said hearing."

No action was taken by the board at this meeting.   At the next meeting, held August 10, 1920, a motion to refer the matter to the civil service commission was defeated, and the board then, by formal vote, adopted the recommendation of the committee to discharge the relator. At the meeting of the board, held August 24, 1920, the relator made a written demand to be reinstated, on the ground that the action of the board was in violation of the civil service laws and of the law giving preference rights to honorably discharged soldiers, and on the further ground that he had been given no notice of the charges and no opportunity to meet them.   In this demand he stated that he was an honorably discharged soldier from the army of the United States in the world war.   So far as the return discloses, no action was taken by the board on this demand.

The relator rests his appeal on the proposition that the board of public welfare lacked power to discharge him and that he could be discharged only by the civil service commission.

Chapter 63, p. 70, of the Laws of 1917, established a civil service commission for the city of Minneapolis and divided the officers and employes of the city into two divisions, designated as the "Classified Service" and the "Unclassified Service."   The commission was required to prepare and keep a register of all employes of the city in the classified service; to classify and grade the different offices and positions according to the duties to be performed; to hold public competitive examinations to test the relative fitness of applicants, and to keep a register of those found eligible to appointment to positions in the various grades.   The act provides that when a vacancy is to be filled the appointing officer shall notify the commission, and the commission shall certify the highest name from the appropriate list of the eligible regis-

ter, and that all vacancies shall be filled from the names so certified. There are several exceptions not necessary to mention here. The act provides in section 11 that: "No officer or employe after six months continuous employment shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense. Such charges shall be investigated by or before said civil service commission or by or before some officer or board appointed by said commission to conduct such investigation."

The relator contends that he is within the protection of this statute. He concedes that under this act the employing officer or board may dismiss an employe without the hearing above provided for, unless the employe has been in continuous service for more than six months, but insists that he had been in continuous service for more than that period.

The act creating the board of public welfare provided for reorganizing and consolidating several departments and boards of the city under this board, and abolished such former departments and boards. It provided that "the terms of office and employment of all officers and employes of said departments and boards herein abolished shall terminate and no longer continue except as herein otherwise expressly provided." Section 9. It provided that officers and employes of the former departments and boards should be eligible to similar offices and positions under the board of public welfare, without taking civil service examinations, and that they should "continue in their respective offices or positions from the time this act goes into effect until further action of the board." Section 6. It provided that the board should have power to determine the number of employes in each division under its control; that the head of each division should have power to appoint, subject to confirmation by the board, all subordinate employes in his division; and that all employes of the board, other than the commissioner of health, shall be included in the classified service of the city "and their appointment, employment, suspension and discharge shall be made under and pursuant to the provisions of" the civil service act. Section 5.

The act terminated the employment of former employes, except as otherwise expressly provided therein. It was provided therein that

such employes should continue in, their respective positions, until the further action of the board. The board was given power to appoint its own employes, either directly or through the heads of divisions, but could only appoint former employes or persons certified to it by the civil service commission.

Insofar as they are inconsistent, the provisions of this act supersede those of the civil service act, and we think that the board, in determining to accept and appoint as its own employes certain employes of the former departments, and to dismiss certain other employes of such former departments, acted within the authority conferred upon it. The relator was among the employes of the former department of health who were thus dismissed. He acquiesced in this dismissal and accepted an appointment to another position to which he had been certified by the civil service commission. This was a new appointment to a different position, and, in view of the action of the board terminating his former service and his acquiescence therein, cannot be considered as a continuation of that service. Consequently, so far as the civil service act is concerned, the board had the unquestioned right to discharge him from this new position at the time they undertook to do so.

But the relator contends that under chapter 192, p. 194, of the Laws of 1919, which provides that no honorably discharged soldier holding a position "in the state of Minnesota or in the several counties, cities or towns thereof * * * shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges," he was entitled to a hearing, although his period of service was less than six months, and that the power to hold that hearing was vested in the civil service commission and could not be exercised by the board of public welfare.

The civil service act confers the power and imposes the duty on the civil service commission to hold, or to appoint an officer or board to hold, the hearings provided for by that law, but confers no power and imposes no duty on that body in respect to hearings required by any other law. The relator had not been in continuous employment a sufficient length of time to entitle him to a hearing under the civil service law, and the provisions of that act relating to hearings and the discharge of employes have no application to the present case. The act giving

preference rights to honorably discharged soldiers, gave the relator the right to a hearing, but did not specify what officer or board should hold that hearing. It is well settled that the power to discharge an employe rests in the officer or board that appointed him, unless that power has been taken away by some express statute. State v. Wunderlich, 144 Minn. 368, 175 N. W. 677; 2 Dunnell, Minn. Dig. § 8010. It is also well settled that where an officer or employe is entitled to a hearing before he can be removed or discharged, such hearing is to be held by the officer or board possessing the power of removal in the absence of a statute providing otherwise. We find no statute taking from the board of public welfare the power to hold the hearing accorded the relator by the soldiers preference act, and concur in the conclusion reached by the lower court that that board had authority to hold such hearing and that its action was legal and valid.

The relator raises some question as to the sufficiency of the notice given him. He appeared before the board and was offered whatever opportunity he desired to present facts and evidence; he made his statement and then informed the board that he had nothing more to present at the hearing. This conduct operated as a waiver of formal notice of the hearing.

We note that there is nothing in the return showing that the relator was an honorably discharged soldier, except his assertion to that effect in his demand for reinstatement made two weeks after he had been discharged. But from the statements of counsel at the argument, we have taken it for granted that he was an honorably discharged soldier, and that the board knew that fact at the time they discharged him.

Our examination of the return satisfies us that the district court disposed of the case correctly and its judgment is affirmed.