## STATE EX REL. HELGE G. BLOOMQUIST v. P. E. BARKER AND OTHERS.[1]

December 22, 1933.

No. 29,736.

*Giblin & Manthey,* for appellant (relator below).
*Luke F. Burns,* for respondents.

*STONE, Justice.*

Mandamus, tried below to a decision for respondents. Relator appeals from the order denying his alternative motion for amended findings or a new trial.

Respondent Barker is the mayor, and his corespondents, other than Major S. Smith, are the members of the city council of the city of Virginia. Mr. Smith is the street commissioner, selected for the position instead of relator, a proceeding which the latter challenges under the soldiers preference law. L. 1919, c. 14, 1 Mason Minn. St. 1927, § 4368.

The street commissioner of Virginia, found not to be "the head of a department," is held subject to the soldiers preference act. The

[1]Reported in 251 N. W. 673.

street commissioner under the supervision of the city engineer, in the language of Judge Hughes,

"is in active charge of the crews doing the work which the charter provides shall be done under the supervision of the engineer. He determines where and in what numbers the men under him shall work, and has power to purchase needed supplies  *  *  *,  the city engineer having general supervisory powers over such work."

There is a street committee of the city council, which under the charter is charged with the duty to "decide any dispute that may arise between the city engineer and the street commissioner."

The present council had its "organization meeting" April 5, 1932. Just before that meeting relator filed his application for appointment, claiming benefit of the soldiers preference law. He was the only applicant entitled to such benefit. There is no question of his good character or standing as a discharged soldier, with honorable service overseas during the World War. When the meeting came to the matter of selecting a street commissioner, the several applications were taken up and inquiry made for relator, who was present. Thereupon, according to the findings, proceedings were had as follows:

"An adjournment was then taken to an adjoining room, where an investigation was made by the council as to his qualifications for the position. At said investigation the council was advised by the city attorney as to the provisions of the soldiers preference act and what they were required to do to comply with it. The relator was asked to state his qualifications; he stated that he had been employed at one time as foreman for one of the mining companies and had been employed under the county superintendent of schools. Inquiries were directed to him by different members of the council as to his previous experience and qualifications for the position. The members of the council, with the exception of the respondent Pearson, had no close acquaintance with the relator, if they knew him at all. The respondent Pearson had known him for some years. At the conclusion of the questions asked, the relator was asked as to whether he desired to make any further statement, and

there was no indication of such desire. The inquiry was then made as to whether anyone desired to ask any further questions. No one indicated that he did. No member of the council suggested that the hearing should be adjourned or that anything further should be done in the way of investigation. The council then returned to the council room and proceeded to ballot for street commissioner. Upon such ballot aldermen Markkula, Eaton, Lofback, Marsh, and Kraker voted for respondent Smith, two voted for relator, and two voted for others. * * * Upon the resolution confirming the appointment all of the members of the council voted therefor. The majority of the council claimed that as a result of the investigation they were satisfied that the relator was not qualified to fill the position of street commissioner and render reasonably efficient service. The investigation did not consume more than 15 minutes.

* * * * * *

"The respondents Markkula, Eaton, Lofback, Marsh, Kraker, and Sigel went to the meeting with their minds determined as to whom they were going to vote for for street commissioner, and at said meeting, and with the exception of Sigel, voted for respondent Smith as they had previously determined to do, and respondent Sigel voted as he had previously determined."

There is also a finding that five of the aldermen "voted alike on practically all, if not all, of the applications voted upon." Three so voting were newly elected, having campaigned together. There is a concluding and determinative finding that the decision "not to appoint relator was not manifestly arbitrary."

In State ex rel. Meehan v. Empie, 164 Minn. 14, 204 N. W. 572, we rejected the theory of comparative qualifications as between a soldier applicant and others with no record of military service. But in State ex rel. Moilan v. Brandt, 178 Minn. 277, 279, 266 N. W. 841, we reversed a fact finding that the city council of Virginia had acted "with manifest arbitrariness" in refusing to appoint a soldier applicant. It was emphasized that the appointing power does not rest with any court but with the council, and that the soldiers preference act does not "make the jury or a court a body

which may review the act of the council. It is only when there is a failure on the part of the council to act or a manifestly arbitrary action on its part that a court may interfere." Within that rule, it is enough to dispose of this case to say that the argument does not disclose, and we cannot find in the record, anything to justify us in disturbing the finding of fact that there was no arbitrary action in this case.

A hearing was had. It was all the hearing relator wanted at the time. He did not then or later ask to submit anything additional. The council saw him and heard him. The position is one of responsibility. Its occupant must be able, not only to organize, but to handle considerable crews of workmen. In a limited but important way he is a purchasing agent. His possession of adequate capacity is, at least, left in enough doubt so that we would be usurping the function of trial, as distinguished from our proper one of review, if we should overturn the decision below.

There has been inexcusable delay in this case, the responsibility for which is in no part chargeable to us. The term of the office in question will expire next April, only a few months hence. A case involving an issue of such public concern should be conducted by counsel with the utmost expedition. The district court and this court will aid in every possible way. The delay here is of the sort largely responsible for much of the criticism of the supposed dilatory action of lawyers and judges by lay opinion. The case was not submitted here until December 6, 1933.

Order affirmed.