STATE EX REL. SILAS J. SPRAGUE v. HARVEY HEISE, INDIVIDUALLY AND AS MAYOR OF VILLAGE OF CRYSTAL, AND OTHERS.[1]

December 31, 1954.

No. 36,450.

[1]Reported in 67 N. W. (2d) 907.

*Byron W. McCullagh,* for appellants.
*Richard J. Parish,* for respondent.

KNUTSON, JUSTICE.

Petitioner, respondent here, Silas J. Sprague, was appointed building inspector for the village of Crystal for the year 1952 on January 14, 1952, under the provisions of the village plat and building ordinance, which, among other things, provides:

"The building Inspector shall be appointed by the Council annually in January and shall hold office until his successor is elected and qualified."

He is given general supervision over inspections of buildings and is authorized to enforce and interpret the ordinance; to supervise the construction, demolition, or moving of all structures; and to report monthly to the council on permits issued during the previous month and on all matters pertaining to building construction. The fees to be charged are fixed by ordinance.

On December 2, 1952, the village duly adopted a merit-system ordinance pursuant to the provisions of M. S. A. c. 44. The ordinance contains the same provisions as the statute. Up to the time

of trial the personnel board to carry out the terms of the ordinance had not been established.

On February 9, 1953, the village council proceeded to appoint a new building inspector for the year 1953 without granting any hearing to petitioner. On February 13, 1953, the village sent petitioner a letter reading:

"The Village Council of the Village of Crystal terminated your appointment at their meeting on Monday, February 9, 1953 and appointed Leo Schmock as Building Inspector for the year 1953."

Petitioner is a veteran of World War I. Upon receipt of the above letter he refused to surrender the village books in his possession on the ground that he was a veteran and had not been properly discharged. Thereafter he did nothing until he commenced this action in July 1953. The trial court found that he was unlawfully discharged and ordered his reinstatement with damages. Judgment was entered, and this appeal is from the judgment.

■ While there is a dispute between the parties, the evidence will sustain a finding that at the time petitioner's successor was appointed the village council knew that petitioner was a veteran. The veterans preference law does not require formal notice to the employer. It is sufficient if the officer or board having the power of appointment has knowledge of the rights of the employee at the time of taking action. 13 Dunnell, Dig. (3 ed.) § 6560, note 90.

M. S. A. 44.14 provides:

"This chapter does not exclude or modify the application of sections 197.45 and 197.46, known as the veterans preference law."

■ M. S. A. 44.08[2] requires an employee to make a written request, within 15 days after notice of action dismissing him, that charges be

---

[2]Section 44.08 contains the following provisions relating to dismissal:

"No permanent employee in the classified service shall be dismissed or suspended without pay for more than 30 days, except for just cause, which shall not be religious, racial, or political. No such action shall be taken except after the employee has been given notice of the action in writing. A copy of the notice shall be transmitted to the board. Upon written request made by the employee within 15 days after receipt of such notice, the ap-

filed against him and that a hearing be then held on such charges. The village contends that, inasmuch as no written request that charges be filed against him was made within 15 days after petitioner's dismissal, he is now precluded from seeking relief.

That contention is untenable for a number of reasons. In the first place, the village claims that it did not dismiss petitioner but that his term, being for a fixed period, expired without any action on the part of the village. In the second place, no notice of dismissal, as such, was ever sent to petitioner. Under these circumstances, the 15-day limitation has no application. Aside from that, petitioner's rights are governed by M. S. A. 197.46 rather than by § 44.08. Under § 197.46 he is entitled to a hearing before discharge. He is entitled to appeal within 15 days after notice of a decision after such hearing. Here he was never given any hearing; consequently, there has been no notice of a decision based on such hearing and the provisions relating to a 15-day limitation on his right to appeal have no application.

■ It is the contention of the village that the term of the building inspector was fixed by the plat and building ordinance and that the term expired automatically at the end of the year for which the appointment was made.

Under the terms of the merit-system ordinance, every employee of the village was under the classified service except those expressly excluded from the act. Section 44.03, subd. 1(e), permits the village to exclude from the classified service employees not expressly excluded in the act itself. In this case, the position of building inspector is neither excluded by the act or the ordinance, nor has the village excluded it under subd. 1(e); hence, it follows that the position is within the classified service. All employees holding posi-

___

pointing authority shall file the charges of inefficiency or misconduct on which the dismissal or suspension is based with the employee concerned and with the secretary of the board and a hearing shall be held by the board thereon after 10 days written notice to the employee of the time and place of the hearing. Action of the appointing authority shall be final if no such written request is made within 15 days after receipt of the notice of dismissal or suspension."

tions at the time the ordinance was adopted were blanketed in under the provisions of § 44.10. Whatever may have been the status of the position before the adoption of the ordinance, it, being within the classified service, was thereafter subject to the provisions relating to dismissal. Once it was within the classified service, the appointment no longer was governed by the old plat and building ordinance and, even if, prior to that time, the appointment was for a fixed term, it no longer was so after adoption of the merit system. Appointment for a fixed term is wholly inconsistent with the merit system, and, if it had been the intention of the village to exclude this position, it could easily have done so under § 44.03, subd. 1(e), and thereafter have kept the appointment upon a fixed-term basis. It did not do so.

■ After the position came under the classified service, thereby removing any fixed-term basis it previously may have had, it was also subject to the veterans preference law insofar as dismissal is concerned. Being under the veterans preference law, petitioner could not be discharged without a hearing even during the six-month probationary period provided by § 44.10. State ex rel. Nelson v. Board of Public Welfare, 149 Minn. 322, 183 N. W. 521.

■ M. S. A. 197.46, relating to the removal of an employee entitled to veterans preference, provides in part:

"* * * Nothing in sections 197.45 and 197.46 shall be construed to apply to the position of * * * one chief deputy of any elected official or head of a department, * * *."

We have held that, inasmuch as the act excludes a chief deputy of the head of a department, it must follow that it also excludes the head of the department. State ex rel. McOsker v. City Council of Minneapolis, 167 Minn. 240, 208 N. W. 1005.[3] The village contends that the building inspector was the head of a department and therefore excluded from the protection afforded by the act. There is no definition of "head of a department" in the act or the ordinance, and our decisions are not too helpful in defining this term. In State ex rel. McOsker v. City Council of Minneapolis, *supra*, we suggested

---

[3]See, also, Opinions Attorney General, No. 85-C, May 20, 1946, and No. 85-I, February 10, 1938.

that the head of a department is a public officer vested with discretion in the performance of his duties, not subject to direction from superior authority, but, on the contrary, possessing the necessary authority to appoint clerks and subordinates.

In State ex rel. Meehan v. Empie, 164 Minn. 14, 19, 204 N. W. 572, 574, we held that a market master in charge of markets and market houses was not a head of a department, following the trial court's finding that any person of average intelligence and fairly pleasant disposition could handle the position and that it was "just one step above a common labor job."

In holding that a superintendent of the city waterworks was not the head of a department in State ex rel. Trevarthen v. City of Eveleth, 179 Minn. 99, 102, 228 N. W. 447, 448, we said:

"The evidence showed, and the court so found, that the superintendent of waterworks had no authority to employ or discharge men or to determine the number to be employed, except only in emergency cases; that he had no supervision or control over the bookkeepers or the clerical force in the office; that he had nothing to do with fixing rates or the collecting of water rentals. As conclusions of law the court found that the superintendent of waterworks was not the head of a department and that such position came within the provisions of the soldiers preference act, and that Trevarthen was entitled to the position and ordered judgment accordingly. We hold that the findings of the court are amply supported by the evidence and must stand."

In State ex rel. Bloomquist v. Barker, 190 Minn. 370, 251 N. W. 673, we held that a street commissioner who is in active charge of the crews doing the work which the charter provides shall be done under the supervision of the engineer and who determines where and in what numbers the men under him shall work and has power to purchase needed supplies, the city engineer having general supervisory powers over such work, is not the head of a department.

On the other hand, in State ex rel. Michie v. Walleen, 185 Minn. 329, 330, 241 N. W. 318, we held that a county engineer is the head of a department. We there said:

"* * * The statute provides that he shall have charge of the high-way work of the county and the forces employed thereon; that he be paid the same as the 'other county officers'; that he give a $3,000 bond to be approved in the same manner as 'bonds of other county officers.' His work requires technical, professional training, and his competency must first be approved by the commissioner of highways. He is the highest authority in the county as to his official duties; all road work in the county must be done under his supervision; the success of his department depends upon his engineering technique. The employes in his department work under his directions. Road builders and contractors must meet his requirements. He is an official whose duties are fixed by law. He is the head of his depart-ment. This being true, and as we construe the soldiers preference statute, it is without application."

For other cases, see 19 Wd. & Phr. (Perm. ed.) p. 151.

While it is difficult to lay down any rule that is all inclusive and there may be language in the decisions which seems to be applicable to the facts in this case, it seems to us that "head of a department" denotes something more than an employee who has duties different from other employees. Here the building inspector was the sole employee doing that type of work. He had no power to hire or discharge subordinates; he had no discretion in fixing fees; he was answerable to the village council; and, while he had a part-time clerk who kept the records, he could neither hire nor fire her nor otherwise control her work. The head of a department is excluded from opera-tion of the act by implication from the language of the statute and the ordinance excluding the deputy to such head. The head of the department is not mentioned specifically as being excluded. It must have been the intention of the legislature that "head of a depart-ment" meant the head of some division of the city government which was important enough to have a deputy and that only such depart-ments could be excluded as a separate department. We think that the building inspector here is only an employee of the village and not the head of a department. While cases may arise where a depart-ment has only one employee, who thereupon would be the head of the

department, we believe that ordinarily, before anyone could be classified as a head of a department, the department must be sufficiently important as to include more than one employee.

■ The village next contends that the damages are excessive. During the year 1952 the village made no separate charge for inspecting plumbing and gas connections. In 1953 it required a permit for plumbing installations and connections to gas and required the payment of a separate fee for inspections thereof. As a result, the inspection fees were considerably larger in 1953 than they had been the preceding year. It is the contention of the village that damages should be limited to the amount which the inspector would have collected under the charges made in 1952. There is nothing in the record to show that petitioner was not qualified to make the same inspections as were made by his successor. That being the case, the measure of his loss is what he would have earned had he been permitted to continue as inspector less what he earned during the interim. The trial court applied the correct rule, and the evidence reasonably sustains its finding; consequently, it must stand.

■ The last contention of the village is that petitioner has been guilty of laches. While we cannot look with approval on the delay in taking action evidenced in this case, we believe that the trial court was justified in holding, at least inferentially, that laches should not bar recovery. While petitioner took no affirmative action from February to July, the record will support a finding that, from the beginning, he asserted his right to the position. Under these circumstances, the delay may have been occasioned as much by failure of the village to give him a hearing as by his failure to act. We must state, however, that in cases of this kind it is important that the individual claiming rights under civil service or the veterans preference law assert his rights promptly in order that the municipality's liability to pay twice be minimized as much as possible.

Affirmed.