STATE EX REL. AL McGINNIS v. POLICE CIVIL SERVICE
COMMISSION OF GOLDEN VALLEY AND OTHERS.

91 N. W. (2d) 154.

June 27, 1958—No. 37,262.

*Stanley D. Kane* and *Kenneth Culp Davis,* for appellant.

*Hvass, Weisman, Peterson, King & Schwappach* and *Si Weisman,* for respondent.

*Miles Lord,* Attorney General, and *Charles E. Houston,* Solicitor General, amici curiae.

DELL, CHIEF JUSTICE.

Appeal from an order of the district court denying a motion of the village of Golden Valley[1] for judgment notwithstanding the verdict or in the alternative for a new trial.

This case concerns the discharge of Al McGinnis, a municipal employee of the village of Golden Valley. The case was commenced August 10, 1955, when the village served an order of suspension and charges against McGinnis, its chief of police, which charges were denied in a general denial entered by McGinnis. Following this, hearings were held before the Golden Valley Police Civil Service Commission which

---

[1] The notice of appeal in the district court was directed to the Police Civil Service Commission of the Village of Golden Valley, the Golden Valley Village Council, the chairman of the Police Civil Service Commission, the secretary of that commission, another member of the commission, and the attorney for the village. They are all appellants in this court, but since in the proceedings below they were referred to simply as the village, they will be so designated in this opinion.

made findings of fact, conclusions, and ordered the discharge of McGinnis as chief of police.

On October 4, 1955, the village was served with a notice of appeal under M. S. A. 197.46 of the Veterans' Preference Law and the next day it was served with a notice of appeal under § 419.12 of the Police Civil Service Commissions Act. A motion was then made by the village to dismiss the appeal under the Veterans' Preference Law and to try the appeal under the civil service act. It was also sought by the village, in the event that the district court held the Veterans' Preference Law applicable, to limit the issue to the reasonableness of the action of the Civil Service Commission. An affidavit was then filed by counsel for the village in support of this motion. No counteraffidavit was offered by the chief of police. It was stated in the affidavit that on April 17, 1948, the Police Civil Service Commission of Golden Valley, in conjunction with the State Civil Service Commission and the Department of Internal Security of the University of Minnesota, conducted an examination for the position of police chief of the Golden Valley police force; that the specifications for the position of police chief in the notice of examination stated that the chief's duties would be to have the chief administrative responsibility for the maintenance of order and the enforcement of laws and ordinances and to direct and coordinate all activities of the police department. In the specifications, examples of the work of the chief of police were listed as follows:

1. Review the acts and reports of subordinate officers.
2. Submit reports to the city.
3. Make personal inspection of police beats.
4. Make assignments to officers.
5. Confer with other officers of the village on law enforcement matters.
6. Assist in the selection of new members for the police force, and in the training and promotion of the police personnel.
7. Analyze crime and police conditions and plan prevention work.
8. Explain the functions of the police department to the public.
9. To maintain contacts with other police departments and with professional police organizations.

The district court, holding that the chief of police was not a department head or chief deputy, ordered that the appeal should be tried under § 197.46. It further ordered that the issues would be framed upon motion of either party and that the trial would be by jury. Following this, the district court ordered that the issues to be submitted to the jury would be substantially as follows: (a) Was Al McGinnis guilty of misconduct in office? (b) Was Al McGinnis guilty of inefficiency in office?

The case then proceeded to trial de novo in connection with the above-stated issues. The trial court refused to consider the transcript of the proceedings before the Civil Service Commission. At the conclusion of the trial the following interrogatories were given to the jury:

(1) Was Al McGinnis during the period in question guilty of inefficiency as chief of police of the Village of Golden Valley?

(2) Was Al McGinnis during the period in question guilty of misconduct as chief of police of the Village of Golden Valley?

The jury was instructed that a finding of either inefficiency or misconduct is ground for removal from office. The jury answered "No" to both interrogatories. The court, after reciting the answers to the above interrogatories, reversed, vacated, and set aside the order of the Golden Valley Police Civil Service Commission.

Assignments of error which are necessary to a determination of this case on appeal are as follows: (1) The holding that a de novo review by the trial court of this case was constitutional, and (2) the holding that the chief of police was not a department head or chief deputy and therefore did not come within the exclusion of § 197.46. We are therefore confronted with two issues: (1) The propriety of that part of § 197.46 which provides the method of review by the district court in cases such as the one at bar; and (2) whether or not the chief of police of Golden Valley was a department head or chief deputy under § 197.46.

■ Section 197.46 deals with veterans' privileges and provides that honorably discharged veterans in certain public employment shall not be removed from that job or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges

in writing. This section also details certain things with respect to the hearing provided for; appeals from the decision to the district court; and the method of review in the district court. The village does not question the preference provided for in the above section.[2] We are here concerned only with that part of the above section dealing with the procedure for review by the district court of a decision of the board. This portion reads:

"* * * Issues of fact shall be framed upon motion of either party and the trial thereof shall be by jury unless trial by jury shall be waived. The burden of proving incompetency or misconduct shall rest upon the governmental subdivision alleging the same."

The essence of the dispute between the parties lies in the contention of the village that the proper method of review by the district court should be to determine whether the board's action in discharging an employee was arbitrary, capricious, or unreasonable, or, in other words, whether or not there is any evidence to support the findings and conclusions of. the board. The village points out that in the case at bar a full hearing was had before the Police Civil Service Commission of the Village of Golden Valley and that after findings of fact had been made the chief of police was duly discharged. The district court disregarded this determination and submitted to the jury the questions whether the chief of police was guilty of inefficiency or misconduct. Evidence was taken and the questions of inefficiency and misconduct were determined de novo as if the civil service commission had never determined them. Not only was a completely new record of evidence prepared but the court allowed the jury to substitute its judgment on all questions for that of the commission. The village contends that a court may not substitute its judgment for that of an administrative agency if the function is administrative and that the function herein involved, namely, the discharge of a municipal employee, is a nonjudicial function.

This court has long recognized that a court must not exercise nonjudicial functions by setting aside legislative or administrative orders

---

[2]The constitutionality of this preference has been upheld. State ex rel. Boyd v. Matson, 155 Minn. 137, 193 N. W. 30.

without limiting its inquiry to the reasonableness of that order. Steenerson v. G. N. Ry. Co. 69 Minn. 353, 72 N. W. 713; State v. G. N. Ry. Co. 130 Minn. 57, 153 N. W. 247; State v. Duluth, M. & I. R. Ry. Co. 246 Minn. 383, 75 N. W. (2d) 398.

In 1897 this court in Steenerson v. G. N. Ry. Co. *supra,* had before it the issue of the scope of review of orders from the Railroad and Warehouse Commission. It was determined that the court's review should be limited to an examination of matters of fact to ascertain whether there was any evidence reasonably tending to support the findings of fact disputed and to an examination of questions of law arising on the facts conceded. In coming to this determination our court stated that the fixing of rates is a legislative or administrative act, not a judicial one, and the performance of such duties cannot, under our constitution, be imposed on the judiciary. In other words, it was held that the legislature could not provide that the court should put itself in the place of the commission, try the matter de novo, and determine what were reasonable rates, without regard to the findings of the commission.

In 1915, in Hunstiger v. Kilian, 130 Minn. 474, 538, 153 N. W. 869, 1095, this court had before it the question of the scope of review of an order of the town board in denying a license to operate a rendering plant. The town board acted under G. S. 1913, §§ 4666 to 4668 (now M. S. A. 145.17 to 145.19), relating to the regulation of certain trades or employment. The court held that the function of the town board in passing on the issuance of the license was performing a quasi-judicial function and that the statute could not be interpreted to mean that the court should put itself in the place of the town board to try the matter anew as an administrative body and substitute its findings for those of the board. Such a statute, the court held, would be unconstitutional as a delegation to the judiciary of a nonjudicial power.

In 1920, in State ex rel. Dybdal v. State Securities Comm. 145 Minn. 221, 176 N. W. 759, the court had before it the scope of review of an order of the State Securities Commission. We held at that time that the commission was an administrative board and that because it determines facts or passes upon questions which may affect parties and excercises judgment and discretion does not imply that it has judicial

power. In that case it was further held that the review of an order from that body is limited that the court can only interfere when it appears that the commission has not kept within its jurisdiction or has proceeded upon an erroneous theory of law, or unless its action is arbitrary and oppressive and unreasonable so that it represents its will and not its judgment, or is without evidence to support it. The responsibility for a correct determination of the existence of a reasonable public demand —the standard to be applied by the commission—is upon the commission and not the court, as the statute could not constitutionally put such responsibility upon the court.

In 1942, in State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. (2d) 544, we had before us the extent of the scope of review of decisions discharging teachers under our statutes regulating such procedures. In that case, after analyzing the whole problem thoroughly, this court decided that the discharge of a teacher was a nonjudicial function. It pointed out that under Minn. Const. art. 3, § 1, our government is divided among three separate departments and that this principle operates broadly to confine legislative matters to the legislature, executive matters to the executive branch, and those which are of a judicial character to the judiciary. A school board, we pointed out, exercises purely administrative functions; some functions partaking of a legislative character; and still others of a quasi-judicial character. Complete jurisdiction in reviewing these actions, it was held, cannot be either directly or indirectly conferred upon the courts but a limited jurisdiction by way of certiorari, and in some cases by statutory appeal, may be conferred upon the courts. However, this is necessarily confined to questions affecting the jurisdiction of the board, regularity of the proceedings, and, as to merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it.

In the recent case of Sellin v. City of Duluth, 248 Minn. 333, 80 N. W. (2d) 67, this court had before it the question of the scope of review of the action of the Duluth Civil Service Commission in discharging an elevator operator. We determined there that the discharge of a municipal employee was an administrative or nonjudicial function

although performed in a judicial manner. In that case we followed the well-settled principle in this state that a court may not substitute its judgment for that of an administrative agency when the administrative function is nonjudicial and held that the trial court could not take jurisdiction to perform a nonjudicial function any more than the legislature could impose such a function on the courts.

The question then arises as to whether the determination in the trial court to retain McGinnis was a nonjudicial function even though performed in a judicial manner. McGinnis contends that the function here involved is clearly judicial and that power to remove, when exercised through proceedings which involve notice and hearing, is essentially judicial in nature. However, it cannot be said that the character of the act alone determines whether a given function is judicial or nonjudicial for the purpose of determining into which branch of the government that function falls. The decision cannot turn on the fact that the given function involves such things as formal charges, notice, and hearing.[3]

In State ex rel. Hart v. Common Council, 53 Minn. 238, 55 N. W. 118, it was pointed out that a given function may, by the manner it is performed, be a quasi-judicial function and therefore permit review on certiorari. Thus a particular case may contain certain elements of what is ordinarily considered a judicial function and yet constitute primarily a function which may not be exercised by the judiciary. Sellin v. City of Duluth, 248 Minn. 333, 80 N. W. (2d) 67.

The village in this connection argues that the function here involved of personnel management, namely the discharge of a municipal employee, is a nonjudicial function. It argues further that a tribunal or administrative body cannot determine whether an officer is inefficient

---

[3]See State ex rel. Ging v. Board of Education, 213 Minn. 550, 570, 7 N. W. (2d) 544, 555, where we said: "The field of judicial inquiry is not enlarged in the case of discharge of teachers for cause, essentially an executive function, by the fact that a legislative act requires such court trappings as formal charges, notice, and a hearing." See, also, State ex rel. Dybdal v. State Securities Comm. 145 Minn. 221, 176 N. W. 759, where we held that because a commission or administrative board determines facts or passes upon questions which may affect parties and exercises judgment and discretion does not imply that it has judicial power.

unless it is able to locate the line between efficiency and inefficiency, and by the same token it could not determine whether misconduct was present unless it was able to locate the line between proper conduct and misconduct. It also claims that, even though judges could readily make themselves competent to perform such a task, these decisions are better left in administrative hands as this branch performs such functions.

■ It is apparent that here, as in the Sellin case, the court through a jury found the facts necessary for a determination that the municipal employee should be retained rather than discharged, thus reversing the civil service commission's findings on those facts. It is these facts that the court may not determine de novo without regard to the findings of the commission. Sellin v. City of Duluth, *supra.*

Whether a given function is nonjudicial for the purpose of determining what will be reviewed is largely historical. Cooper, Administrative Agencies and the Courts, p. 309. One test to determine whether an administrative agency is performing a nonjudicial function is whether the court could have been charged in the first instance with the responsibility of performing that function. Another test is whether the function the administrative agency performs is one that courts historically have been accustomed to perform and had performed prior to the creation of the administrative body.

It is clear that traditionally the removal of a municipal employee has been a discretionary matter with the municipality. The power to appoint officers or employees of a municipal corporation carries with it the power of removal of such employees at the municipality's pleasure unless that power of removal is restricted by statutory law. Oikari v. Independent School Dist. No. 40, 170 Minn. 301, 212 N. W. 598; State ex rel. Castel v. Village of Chisholm, 173 Minn. 485, 217 N. W. 681. Thus historically the courts have not been charged with the duty of deciding whether to retain or discharge public employees.[4]

■ However, apart from the above consideration, four different cases have specifically held that the decision of an administrative body in

---

[4]Of course this does not include employees of the judicial branch itself for which the courts determine in the first instance whether to hire, whether to retain, or whether to discharge.

determining whether or not to discharge an employee is an administrative function. And further that a review of such a decision by the courts must be a limited review. Sellin v. City of Duluth, *supra;* State ex rel. Ging v. Board of Education, *supra;* Hughes v. Dept. of Public Safety, 200 Minn. 16, 273 N. W. 618; State ex rel. Hart v. Common Council, *supra.* See, also, Powell v. Township of Carlos, 177 Minn. 372, 225 N. W. 296, and Wagner v. Township of Carlos, 182 Minn. 571, 235 N. W. 27. Thus, in view of the law of this state that an order by an administrative body which involves a nonjudicial function may only be reviewed in a limited way[5] and because the function here involved was clearly administrative and nonjudicial, the above-quoted portion of § 197.46 must be held to be ineffective as it clearly provides for a method of review by the district court which is inconsistent with prior holdings of this court. Therefore we hold that review of the order provided for in § 197.46 must be by certiorari to the district court.[6]

McGinnis relies on Civil Service Comm. v. Matlock, 205 Ark. 286, 168 S. W. (2d) 424; Ex parte Darnell, 262 Ala. 71, 76 So. (2d) 770; and Board of Education v. Mulcahy, 50 Cal. App. (2d) 418, 123 P. (2d) 114. These cases it is true do hold that the discharge of a public employee by an administrative body may be reviewed fully by the

---

[5]See, State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. (2d) 544; Sellin v. City of Duluth, 248 Minn. 333, 80 N. W. (2d) 67. Review contemplated in such a situation is limited to questions affecting the jurisdiction of the board, the regularity of its proceedings, and, in regard to the merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it. In other words, the court cannot substitute its findings for those of the board. It is also pointed out there that in such cases the district court does not have the power to enter judgment setting aside and vacating the decision of the board but may only reverse and send the case back with directions, for example, to proceed with the correct view of law in mind; to permit additional evidence to be taken; or to make additional findings in accordance with law.

[6]It is clearly the law of this state that in such a situation where there is no proper appeal provided for certiorari lies to review such quasi-judicial acts. Beck v. Council of City of St. Paul, 235 Minn. 56, 50 N. W. (2d) 81, and cases cited in footnote.

courts and that it may substitute its findings for that of the administrative body. These cases are not only in conflict with the law of Illinois, Michigan, Massachusetts, and Mississippi[7] but are clearly in conflict with the previous decisions of this court which, it is pointed out above, hold that the function here involved is nonjudicial. We therefore cannot follow these decisions.

McGinnis also cites numerous statutes dealing with appeals from such administrative bodies as the Minnesota Board of Nursing, State Board of Pharmacy, Commissioner of Insurance, etc.[8] These statutes all use the words "de novo" in their provisions for review by the district court on appeal from the particular administrative body involved. The village on the other hand cites several cases where the statutes have used the words "de novo" and the courts have held that the function being performed by the board is not judicial and have construed the words to allow only a limited review in the courts. See, Fire Dept. of City of Fort Worth v. City of Forth Worth, 147 Tex. 505, 217 S. W. (2d) 664; DeMond v. Liquor Control Comm. 129 Conn. 642, 30 A. (2d) 547; Household Finance Corp. v. State, 40 Wash. (2d) 451, 244 P. (2d) 260.[9] In regard to this contention two things are to be noted: (1) The

---

[7]See, City of Aurora v. Schoeberlein, 230 Ill. 496, 82 N. E. 860; In re Fredericks, 285 Mich. 262, 280 N. W. 464; Opinion of the Justices, 300 Mass. 596, 14 N. E. (2d) 465; City of Meridian v. Davidson, 211 Miss. 683, 53 So. (2d) 48; State ex rel. Ging v. Board of Education, *supra;* Sellin v. City of Duluth, *supra.*

[8]See, M. S. A. 148.261, subds. 1 and 2, 151.06(6)(h), 326.546, 326.11, subd. 1, 326.16, 257.111, subds. 1, 3, and 4, 178.09, subds. 1 and 2, 340.404, subds. 2 to 6, 325.58, subd. 1, 325.62, 64.26, and 49.18.

[9]Typical of these cases is Household Finance Corp. v. State, *supra.* In that case the court had before it the question of the scope of review of an order of a board denying a license to a small loan company. The statute governing appeals from orders of the supervisor of banking provided that on appeal from a determination of the supervisor to the Superior Court "A trial shall be had in said Superior Court de novo." The court held in that case that the licensing and regulation of small loan companies is an exercise of the police power and essentially a legislative and administrative function and went on to hold that in spite of the use of the words "de novo" the review in the superior court should be a limited review. It took the position that allowing a new, independent trial on the law and facts from which the

wording of the review sections of those statutes are not the same as the provisions for review in the statute before us; (2) those statutes are not before us on this appeal. Thus, whether review of orders from the administrative bodies concerned in those statutes is to be full or limited is not to be considered or decided at this time.

■ In regard to the second issue, § 197.46, so far as is pertinent to this issue, provides:

"* * * Nothing in sections 197.45 and 197.46 shall be construed to apply to the position of * * * or one chief deputy of any elected official or head of a department, or to any person holding a strictly confidential relation to the appointing officer."

Therefore, if the chief of police of Golden Valley was a department head[10] or a chief deputy, then the review of this case by the district court should not have been pursuant to § 197.46 but should have been pursuant to § 419.12.

In the instant case the chief of police sought review initially under both §§ 197.46 and 419.12. At the pretrial conference of this case, the chief of police elected to proceed under § 197.46 and the village then moved the trial court for an order (a) dismissing the appeal made under § 197.46, and (b) to determine the appeal under § 419.12. In determining this motion the court had before it an affidavit of counsel for the village and an exhibit which had been introduced in the commission's hearings. The affidavit disclosed in part that McGinnis had become an officer on the Golden Valley police force in 1940 and that shortly after this the village council passed a resolution putting the village under M. S. A. c. 419 and established a police civil service commission at that time; in 1944 and 1945 the village council and civil

---

superior court would determine whether or not the license should be granted would render the provision unconstitutional. We must also point out that on any issues raised on this point under the statutes cited in footnote 8, Powell v. Township of Carlos, 177 Minn. 372, 225 N. W. 296, and Wagner v. Township of Carlos, 182 Minn. 571, 235 N. W. 27, must be considered.

[10]State ex rel. McOsker v. City Council, 167 Minn. 240, 208 N. W. 1005. In that case it was held that inasmuch as the act excluded a first deputy of the head of a department it must follow that it also excludes the head of a department.

service commission made McGinnis a police captain; and on April 17, 1948, the Police Civil Service Commission of Golden Valley with the State Civil Service Commission and the Department of Internal Security of the University of Minnesota conducted an examination for the position of police chief of Golden Valley. The affidavit further sets forth the specifications for the job of police chief (so far as these specifications are material they have been set forth above). It was further pointed out that, after the commision certified McGinnis as eligible for the position of chief of police, the village council in May 1946 duly appointed him to such position. Attached to the affidavit was a copy of a letter from the commission to the village council certifying McGinnis as eligible. The exhibit which was submitted consists of an excerpt from the minutes of a meeting of the council held September 7, 1954, in which the mayor pointed out that the police civil service commission had absolute control in the hiring, promotion and demotion, and discharge of the police department personnel, and the village council has the responsibility, duty, and right under the law to manage and operate the police department. A motion was then made and passed that the village administrator check into the operation of the police department in three neighboring communities. This exhibit also contains a report from the village administrator to the council which was a result of his study of the police departments in neighboring communities. This points out, among other things, that in all communities the administrative officer exercises administrative control over the chief of police under instructions by the council, but it is further pointed out that responsibility for the effectiveness of the police department rests with the chief of police.

The trial court made no findings of fact in connection with its order holding that the chief of police of Golden Valley was not a department head or chief deputy of a department head. Thus it is not possible to know what the trial court found the facts to be in connection with this determination. On the other hand the trial court did attach to its order a memorandum from which it appears that the court placed great weight upon the fact that the chief of police could not hire or fire subordinates and was not employed for a fixed term. Several attorney general opinions were cited in the court's memorandum which hold that a chief

of police is not the head of a department: Report Attorney General, 1934, No. 697; Opinion Attorney General, No. 85-A, Dec. 26, 1947; Opinion Attorney General, No. 120, Oct. 16, 1951; Report Attorney General, 1954, No. 73. These opinions do not discuss the issue of whether a chief of police might be a chief deputy or a department head and all such opinions seem to be based primarily on the fact that the chief of police was not hired for a fixed term and did not have the power to hire and fire subordinates.

In State ex rel. Sprague v. Heise, 243 Minn. 367, 67 N. W. (2d) 907, decided in 1954, this court had occasion to discuss thoroughly the question of what constitutes a department head within the meaning of § 197.46. That case involved a building inspector who had been appointed by the council of the village of Crystal. Among other things the village contended that the building inspector was the head of a department. We said that there was no definition of "head of a department" in the act or the ordinance under consideration and that our decisions were not too helpful in defining the term. We pointed out there that oftentimes weight has been given to whether an alleged department head had the right to hire or fire subordinates. However, in that case and cases cited therein several factors are set forth to be used in determining what constitutes a department head:

(1) Does the alleged department head have charge of the work done by his department?

(2) Does his work require technical, professional training?

(3) Is he the highest authority at that level of government as to his official duties?

(4) Does he supervise all of the work in his department?

(5) Does the success of his department depend on his technique?

(6) Are the employees in the department under his direction?

(7) Are his duties more than merely different from other employees?

(8) Does he have power to hire and fire subordinates?

Thus there are many criteria which may be found as fact apart from the power to hire and fire subordinates.

It must be pointed out that in a situation such as the one at bar, if in order to be a department head or chief deputy one must have a

definite term of office and the power to hire and fire, it would be tantamount to holding that no one in a position covered by civil service could be either a department head or chief deputy of a department head. It must be understood that by the very nature of the civil service law persons within its protection are not usually hired for a definite term nor could they possibly have the right to hire and fire subordinates as that power is necessarily vested in the civil service commission. See, c. 419. No cases were cited nor may any cases be found which hold that, because a position comes within the protection of our civil service laws, that position may not constitute a department head or chief deputy of a department head.

Therefore we must conclude that, where the position in question is covered by civil service, the fact that the position is not for a definite term or does not carry with it the power to hire and fire may not be considered in determining whether or not a person in that position is the head of a department or is the chief deputy of the head of a department; rather the remaining factors set forth above in 1 to 7 inclusive may be considered in making the determination.

It is our opinion that this case should be remanded with directions to the trial court to make findings of fact consistent with this opinion on the second issue and if it is decided that the plaintiff is not a department head or chief deputy under § 197.46 then in accordance with our decision of the first issue the case should proceed as if in the district court on writ of certiorari.[11] On the other hand, if it is determined that the chief of police is a department head or chief deputy of a department head, then the case should be redecided under § 419.12. Under either statute the employee is protected by a review by the court whose duty it is to determine that the employee's rights are not arbitrarily, capriciously, or unreasonably affected by the administrative body.

Reversed and remanded with directions.

---

[11]See footnote 5.