William HOLMES, Petitioner,
Respondent,

v.

The BOARD OF COMMISSIONERS OF
the COUNTY OF WABASHA, et
al., Appellants.

Nos. C5–86–1335, C7–86–1398.

Court of Appeals of Minnesota.

March 24, 1987.

Maurice W. O'Brien, Gordon-Miller-O'Brien, Minneapolis, for respondent.

Charles F. Angel, O'Brien, Ehrick, Wolf, Deaner & Downing, Rochester, for appellants.

Heard, considered and decided by SEDGWICK, P.J., and LANSING and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Appellant challenges the trial court's determination that respondent William Holmes is not the "head of a department" and is therefore entitled to protection under the Veterans Preference Act. We affirm.

## FACTS

Respondent William Holmes was fired from his job as Zoning Administrator, Agricultural Inspector, and Civil Defense Director for appellant Board of Commissioners of Wabasha County. Holmes is an honorably discharged veteran of the U.S. armed forces and requested a discharge hearing as provided by the Veterans Preference Act. Appellant refused to conduct a hearing, claiming Holmes is the head of a department and therefore exempt from the protections of that act. Upon Holmes' petition, the district court found Holmes is not the head of a department and ordered his reinstatement pending the requested discharge hearing.

The court denied appellant's motion for a new trial, in which appellant claimed the decision was not justified by the evidence and that newly discovered evidence required a different result.

## ISSUES

1. Is a new trial warranted because the trial court's decision was not justified by the evidence?

2. Is a new trial warranted because of newly discovered material evidence?

## ANALYSIS

The Minnesota Veterans Preference Act provides that honorably discharged veterans may not be removed from employment with a Minnesota county without first having the benefit of a hearing. Minn.Stat. § 197.46 (1984). The statute is expressly inapplicable to the chief deputy of an elected official or a department head, and this exemption is construed to include the head of a department as well as his or her chief deputy. *Id.; Granite Falls Municipal Hospital and Manor Board v. Dept. of Veterans Affairs*, 291 N.W.2d 683, 685 (Minn.1980). The burden to establish that respondent Holmes is the head of a department is on appellant as "the appointing officer." Minn.Stat. § 197.46.

1. Findings of fact supporting the trial court's determination will not be set aside unless clearly erroneous, with due regard given to the trial court's opportunity to judge the credibility of the witnesses.

Minn.R.Civ.P. 52.01.[1] Findings are not clearly erroneous if they are reasonably supported by the evidence. *Ferguson v. Shea*, 374 N.W.2d 575, 576–77 (Minn.Ct. App.1985).

Appellant argues Holmes is not only the head of a department, but the head of three departments—Zoning, Agriculture, and Civil Defense. Except for his secretary, however, Holmes constitutes the entire department in each of these areas; in effect, he is employed only part-time in each of the three positions.

The "head of a department" means the head of some government division "which was important enough to have a deputy," and "only such departments [can] be excluded as a separate department." *State ex rel. Sprague v. Heise*, 243 Minn. 367, 373, 67 N.W.2d 907, 912 (1954). *Sprague* acknowledged that cases may arise that deviate from the ordinary rule. *Id.* at 373–74, 67 N.W.2d at 912. However, we find no history of any such exceptions.

Here, not only is there no deputy in any of the departments, but it is apparent that the functions of all three areas can be properly cared for by one person with clerical support. *See State ex rel. Caffrey v. Metropolitan Airports Commission*, 310 Minn. 480, 486–87, 246 N.W.2d 637, 641 (1976) (director of public affairs not the head of a department where he was the only employee in his office except for a secretary, lacked authority to hire or fire, and was subject to the supervision of others). Even considering the three departments as one, the work involved is not "important enough" to constitute a department with a deputy and a head of the department. *Sprague*, 243 Minn. at 373, 67 N.W.2d at 912.

Relying on *Sprague* and other cases, the Minnesota Supreme Court has since itemized the various factors used to determine what constitutes a department head:

(1) Does the alleged department head have charge of the work done by his department?

(2) Does his work require technical, professional training?

(3) Is he the highest authority at that level of government as to his official duties?

(4) Does he supervise all of the work in his department?

(5) Does the success of his department depend on his technique?

(6) Are the employees in the department under his direction?

(7) Are his duties more than merely different from other employees?

(8) Does he have power to hire and fire subordinates?

*State ex rel. McGinnis v. Police Civil Service Commission of Golden Valley*, 253 Minn. 62, 75, 91 N.W.2d 154, 163 (1958).

The trial court specifically addressed the *McGinnis* factors in its findings and accompanying memorandum. In addition, the rule that a person normally must work in a department with more than one employee in order to be classified as the head of a department is implicit in factors (6) and (7), which refer to the direction of "employees in the department" and to duties that are "more than merely different from [those of] other employees." *See id.*; *Sprague*, 243 Minn. at 373–74, 67 N.W.2d at 912.

---

1. Appellant asserts little deference is due the trial court, citing the rule that when "the critical evidence is documentary, there is no necessity to defer to the trial court's assessment of the meaning and credibility." *In re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 225, 243 N.W.2d 302, 305, *cert. denied sub nom. Arms v. Watson*, 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976). Documentary evidence, particularly job descriptions, was a factor in the trial court's decision. However, the court also heard testimony from both Holmes and a member of the Board of Commissioners, whose credibility was critical to the court's evaluation. Even the affidavit submitted by Holmes, describing his job responsibilities, was properly subject to a credibility assessment, given that he was a witness and the affidavit conflicted with other documentary evidence. In these circumstances, we will defer to the trial court's findings.

The trial court found Holmes does not have charge of the work done by his department, but instead "is subject to the direct control of the Board of Commissioners," that his duties are "largely ministerial," and that although he "supervises his and his secretary's ordinary daily work he holds very little real authority in any of the capacities of his position." *See McGinnis,* 253 Minn. at 75, 91 N.W.2d at 163 (factors (1), (3), and (4)). Holmes is designated the enforcing officer of the zoning ordinance and is authorized to issue building permits, sanitary permits, and certificates of zoning compliance. His duties are nearly identical to those of the building inspector in *Sprague,* who was found not to be the head of a department. *See Sprague,* 243 Minn. at 368, 67 N.W.2d at 909. We also observe that Holmes was employed full-time for several years as Zoning Administrator before he was given a small increase in salary and the additional duties of Agricultural Inspector and Civil Defense Director.

Holmes is required to forward applications for conditional use permits, variances from the zoning ordinance, plat approvals, cluster development approvals, amendments to the ordinance, and mobile home park permits to the appropriate county commission. In short, he is authorized to handle routine zoning matters, but has only ministerial authority over zoning issues that require the exercise of discretion. In such matters, Holmes is authorized to act only in accordance with the Board's directives. *See State ex rel. Bloomquist v. Barker,* 190 Minn. 370, 251 N.W. 673 (1933) (although the position of street commissioner was one of responsibility, the commissioner was not the head of a department because his function was largely subject to the supervision of the city engineer). *Cf. Granite Falls Municipal Hospital,* 291 N.W.2d at 686 (hospital administrator was the head of a department, where he had the mandate of state rules and regulations and where a municipal ordinance and hospital bylaws granted him all authority required to fulfill his charge to operate the hospital and nursing home); *State ex rel. Michie v.*

*Walleen,* 185 Minn. 329, 330, 241 N.W. 318, 318 (1932) (factors indicating county highway engineer was the head of a department included fact that he had full charge of the highway work and the department employees, that he was bonded and paid equivalent to the elected county officers, and that he was the highest authority in the county as to his duties).

Appellant points out that Holmes also attends meetings between the Board and the various department heads. Whether he is the "head of a department" within the purview of the Veterans Preference Act, however, requires more than appellant's designation of Holmes as the head of a portion of the county's offices.

The trial court further found that the job involved "no technical, professional training prerequisites." *See McGinnis,* 253 Minn. at 75, 91 N.W.2d at 163 (factors (2) and (5)). This finding is supported by the evidence. Although appellant argues that Holmes "picked up" the necessary skills on the job and at various seminars and meetings, such skills are neither technical nor professional but are primarily oriented towards familiarity with the zoning ordinance and methods of enforcing the ordinance that are efficient and helpful to the public. *See State ex rel. Meehan v. Empie,* 164 Minn. 14, 18–19, 204 N.W. 572, 574 (1925) (marketmaster's duties to establish and regulate the location of markets and market houses and to provide for the use thereof required only a person of average ability).

Finally, the trial court found Holmes does not have the authority to hire or fire subordinates but that he is subject to appellant's will "even when it comes to the selection and hiring of his own secretary." *See McGinnis,* 253 Minn. at 75, 91 N.W.2d at 163 (factor (8)); *State ex rel. Trevarthen v. City of Eveleth,* 179 Minn. 99, 102, 228 N.W. 447, 448 (1929) (superintendent of waterworks was not the head of a department where he had no authority to hire or fire except in emergency cases, could not determine the size of his depart-

ment, had no supervision or control over his clerical staff, and had nothing to do with fixing rates or collecting rentals); *State ex rel. McOsker v. City Council of Minneapolis,* 167 Minn. 240, 242, 208 N.W. 1005, 1006 (1926) (head of a department means those "vested with discretion in the performance of their duties, not subject to direction from superior authority but on the contrary possessing the necessary authority to appoint clerks and subordinates"). There is some dispute over whether appellant would permit Holmes to choose the best candidate for the secretarial job, subject to its relatively pro forma ratification. However, because appellant nevertheless reserves the ultimate hiring authority for itself, the dispute is of little consequence.

■ The evidence supports the trial court's findings that Holmes is not the head of a department because he and one secretary can administer the work of the three alleged departments, he is subject to appellant's direct control and is given largely ministerial duties, the job did not require technical or professional training, and appellant retained the ultimate hiring authority in the department.

■ 2. Appellant also claims a new trial is warranted because of newly discovered evidence, the statement of Holmes in a job-description questionnaire that he is the head of a department. When the asserted grounds for a new trial is newly discovered evidence, the rule allows only "material" evidence that "with reasonable diligence could not have been found and produced at the trial." Minn.R.Civ.P. 59.01(4). Before a new trial is granted it should be clear that the newly discovered evidence is likely to lead to a different result on a new trial. *Bruno v. Belmonte,* 252 Minn. 497, 503, 90 N.W.2d 899, 903 (1958). A trial court's refusal to grant a new trial should not be reversed absent a clear abuse of discretion.[2] *See id.*

■ Appellant contends the time between service of respondent's petition for writ of mandamus on May 2, 1986, and the hearing on the petition on May 9, 1986, was so short that it did not have time to discover the questionnaire. Holmes, however, submitted the completed questionnaire to appellant in May 1985, nearly one year before he was terminated. Not only has the original questionnaire continuously remained in his personnel file since that time, but Holmes resubmitted the questionnaire to appellant on March 20, 1986.

Appellant nevertheless asserts the questionnaire definitively shows Holmes was the head of a department. However, Holmes completed the questionnaire pursuant to the new "comparable worth" statute. *See* Minn.Stat. § 471.991–.999 (1984). The statute requires public employers to determine the comparable work value of all employment positions. *Id.* § 471.994. Employees have a self-interest in completing such pay equity questionnaires in a way that makes their jobs look as responsible as possible. Furthermore, other of Holmes' statements on the questionnaire support the trial court's determination that he was not the head of a department.

## DECISION

The trial court's finding that Holmes was not the head of a department is reasonably sustained in light of the evidence as a whole. It was not error to conclude that the newly discovered evidence could have been discovered with reasonable diligence and would not have changed the result upon a new trial.

Affirmed.

---

2. The trial court permitted respondent to submit a late affidavit opposing the motion for a new trial. While this was improper under the rule governing new trial motions, the error does not constitute a basis for a different decision on the merits of this issue. *See* Minn.R.Civ.P. 59.04.