**GRANITE FALLS MUNICIPAL HOSPITAL AND MANOR BOARD, Appellant,**

v.

**STATE of Minnesota, DEPARTMENT OF VETERANS AFFAIRS, Respondent.**

**No. 50176.**

Supreme Court of Minnesota.

April 4, 1980.

Baker, Carlson, Reishus & Holmstrom and Greg Holmstrom, Granite Falls, Schmidt, Thompson & Thompson and Joe Thompson, Willmar, for appellant.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., and Merwin Peterson, Asst. Atty. Gen., St. Paul, for respondent.

Allen Swen Anderson, Granite Falls, for interested veteran.

OTIS, Justice.

Bruce B. Berg was employed as the hospital administrator of appellant Granite Falls Municipal Hospital and Manor from May 1, 1970, to September 27, 1977, when he was discharged by the hospital board. Because he is a veteran he claims that under the Veterans Preference Act, Minn.Stat. § 197.-46 (1978), he cannot be dismissed without notice and an opportunity to be heard. A hearing examiner found that Berg was a department head and therefore excluded from the provisions of the act. The commissioner of veterans affairs rejected that finding, held that Berg was entitled to back

pay, and ordered the board to conduct a hearing. On appeal to the district court the commissioner's ruling was affirmed. We reverse.

■ The Veterans Preference Act prohibits public institutions from discharging a veteran "except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, in writing." Minn.Stat. § 197.46 (1978). However, that act does not apply to persons employed as a "private secretary, teacher, superintendent of schools, or *one chief deputy of any elected official or head of a department,* or to any person holding a strictly confidential relation to the appointing officer." Minn. Stat. § 197.46 (1978) (emphasis added). We have construed the statute to exempt the head of a department as well as his chief deputy. *State ex rel. Sprague v. Heise,* 243 Minn. 367, 371, 67 N.W.2d 907, 911 (1954); *State ex rel. McOsker v. City Council of Minneapolis,* 167 Minn. 240, 241, 208 N.W. 1005, 1006 (1926).

The Minnesota department of health requires every licensed hospital to "designate one person as the administrative head of the institution," Minn.Reg. MHD 37(a) (7 MCAR § 1.37(a)) (1976), and prescribes his duties as follows:

> The hospital administrator shall be the person in charge of the institution. He shall be the direct representative of the Governing Board in the management of the hospital. He shall have the necessary authority and be held responsible for the administration of the hospital in all its activities and departments; subject only to such policies as may be adopted, and such orders as may be issued by the Governing Board.

Minn.Reg. MHD 37(b) (7 MCAR § 1.37(b)) (1976). Berg was in charge of both the Granite Falls hospital and nursing home and was subject to the regulations of each. Minn.Reg. MHD 45(a)(2) (7 MCAR § 1.45(a)(2)) (1972). They required compliance with all state rules and regulations; drafting reports and maintaining records for the department of health; and formulating and administering policies which sup-port the adequate care of patients and residents. Minn.Reg. MHD 45(c), (h) (7 MCAR § 1.45(c), (h)) (1972).

The hospital board adopted by-laws creating the position and defining the responsibilities of the administrator which provide in part:

> The administrator, selected and appointed by the Board, shall be executive head of the facility.

> The administrator shall be given the necessary authority and responsibility to operate the facility in all its activities and departments subject only to such policies as may be adopted and such orders as may be issued by the Governing Board. He shall act as the duly authorized representative of the Board in all matters in which the Board has not designated some other person.

The commissioner of veterans affairs concluded that had the department rules and hospital by-laws been followed, Berg would have been a head of a department. But inasmuch as the responsibilities the Board permitted him to discharge deviated substantially from those specified in the rules and by-laws the commissioner found Berg did not in fact function as an administrator. The commissioner then proceeded to examine the services Berg actually performed in light of the factors discussed in *State ex rel. McGinnis v. Police Civil Service Comm'n of Golden Valley,* 253 Minn. 62, 75, 91 N.W.2d 154, 163 (1958).

In *State ex rel. Stubben v. Board of County Comm'rs,* 273 Minn. 361, 141 N.W.2d 499 (1966), we held that the hospital administrator of the Hennepin County Medical Center was a department head, largely because he was given "almost complete control over administrative functions of the hospital." *Id.* at 372, 141 N.W.2d at 506. *See* 1963 Minn.Laws ch. 738, § 1, subds. 2, 3.

In *Phillips v. St. Paul Human and Civil Rights Comm'n,* 276 Minn. 537, 151 N.W.2d 261 (1967), this court and the commissioner of veterans affairs examined both the powers granted to the executive secretary by law and the duties actually performed by

him. In holding that the executive secretary was not a department head we cited the city ordinance which denied the executive secretary the power to perform the duties of the commission, and limited his function to "attend[ing] to the administration of the Commission's business." *Id.* at 540, 151 N.W.2d at 264. See St. Paul Legis. Code § 74.07(3) (1965). There the evidence established that in practice the executive secretary's duties "were not substantially different from those of the assistant executive secretary." *Phillips* at 541, 151 N.W.2d at 265 (1967).

The factors we held relevant in *McGinnis* are as follows:

(1) Does the alleged department head have charge of the work done by his department?

(2) Does his work require technical, professional training?

(3) Is he the highest authority at that level of government as to his official duties?

(4) Does he supervise all of the work in his department?

(5) Does the success of his department depend on his technique?

(6) Are the employees in the department under his direction?

(7) Are his duties more than merely different from other employees?

(8) Does he have power to hire and fire subordinates?

*State ex rel. McGinnis v. Police Civil Service Comm'n of Golden Valley*, 253 Minn. 62, 75, 91 N.W.2d 154, 163 (1958). (1) As applied to the instant case the by-laws and rules confer on the hospital administrator the responsibility for the overall administration of the hospital and nursing home. (2) The Minnesota Department of Health requires hospital administrators to have experience as assistant administrators for at least two years before they can be registered. Minn.Reg. MHD 38 (1976) (7 MCAR § 1.38) (1976). (3) Under Minnesota law the hospital administrator is the highest authority in the hospital subject only to the hospital board. (4) Obviously a hospital administrator cannot directly supervise the technical performance of the numerous medical specialties which form departments such as surgery, physical therapy, and radiology. Nonetheless, the administrator is responsible for compliance with laws regulating all the hospital activities and for administering personnel policy. (5) Clearly, the success of any hospital depends on the technique, competence, and ability of its administrator. (6) Many hospital employees have professional skills which require independent judgment not subject to second guessing by lay persons. However, all employees are subject to the administrator's overall supervision and direction in non-professional and purely administrative matters. (7) He is the only person charged with legal responsibility for the operation of the entire hospital. (8) He has the legal power to hire and fire employees. The fact that he usually did so after consulting heads of various hospital departments did not diminish his legal authority. Nor did the fact that the hospital board reviewed and on occasion modified his decisions. Without passing judgment on the wisdom of an advisory and policy-making board's becoming involved in the day-to-day affairs of a hospital, suffice it to say such activity, if it took place, did not affect the administrator's legal authority or status as head of the institution. Accordingly we hold that Bruce Berg was not entitled to the procedural benefits of the Veterans Preference Act in contesting his dismissal.

Reversed.