**SOUTHERN MINNESOTA MUNICIPAL POWER AGENCY, Appellant,**

v.

**Philip W. SCHRADER, Respondent.**

No. C5–85–1356.

Court of Appeals of Minnesota.

Jan. 14, 1986.

Review Granted March 21, 1986.

170

Craig A. Beck, Dorsey & Whitney, Rochester, for appellant.

Robert J. Miller, Meyer, Nelson & Miller, Ltd., Robbinsdale, for respondent.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

LANSING, Judge.

The employer, Southern Minnesota Municipal Power Agency (SMMPA), appeals from a judgment upholding the decision of a hearing board appointed under the Veterans Preference Act to reduce the sanction for Philip Schrader's misconduct from dismissal to a 60-day unpaid suspension. The employer contends that after finding misconduct the hearing board had no authority to reduce the sanction. We agree and reverse.

## FACTS

Philip Schrader began working at SMMPA as Director of Information in December 1980. Shortly thereafter Schrader was authorized to hire an information specialist, the only other staff-level employee in the Information Department. Schrader conducted interviews and recommended Mary Ellen Landwehr, who was hired for the position. Because Schrader and Landwehr comprised the entire department, they worked together closely on a daily basis. Landwehr remained at all times under Schrader's direct supervision.

On October 5, 1983, Landwehr met with Pierre Heroux, the executive director of SMMPA, and told him that in July of that year Schrader had proposed that they divorce their respective spouses and marry each other. Landwehr told Heroux that she had refused, but Schrader pursued the matter insistently to the point where she found it extremely difficult to work with him and felt that her job was jeopardized. After hearing Landwehr's complaint Heroux spoke with two other employees who confirmed in general terms what Landwehr had said. Heroux sought the advice of counsel, and the same day he confronted Schrader with Landwehr's complaint. Schrader said he was in love with Landwehr and admitted proposing marriage to her, but denied pursuing the matter.

Heroux told Schrader that he had "five seconds" to decide whether to resign or be fired. Schrader resigned, turned in his

keys, and was told to leave the office that day. Neither Schrader nor Heroux were aware of Schrader's rights as a veteran to written notice and a hearing under the Veteran's Preference Act, Minn.Stat. § 197.46 (1982 & Supp.1983). After consulting with an attorney, Schrader requested a hearing. SMMPA served him with written notice stating that he had committed misconduct by using his position to intimidate and harass Landwehr, exposing the agency to liability under federal and state law and making it impossible for him to efficiently and effectively perform the activities of his office.

Because there was no established civil service board or merit system authority to preside over the hearing, an ad hoc hearing board was formed as provided in § 197.46. The board consisted of M. John Steward, an attorney requested by SMMPA; Willard Crowley, an attorney requested by Schrader; and Robert Martin, a retired county judge selected by both attorneys. The hearing was held on December 20, 1983.

Schrader testified that he fell in love with Landwehr during the summer of 1983 and proposed marriage to her on July 14. He said she gave him hope that there was a "slight chance" she would agree to marry him at that time, but she indicated subsequently that there was no chance of marriage. He denied intimidating or harassing her.

In contrast, Landwehr testified vehemently that she gave him no encouragement. She said she was stunned and did not know how to react to a marriage proposal from her boss. She said Schrader pursued the matter insistently after she told him she wanted only a professional relationship. He required her to accompany him on unnecessary out-of-town trips and required her to drive him on personal errands so they could spend time alone in his car. On these trips she said he would not allow her to take direct routes to their destinations but preferred lengthy, rural routes. He wrote poetry to her and made tapes of music he said reminded him of her, which he played in his car while she drove.

She said that he frequently required her to meet with him in bars, that he constantly talked with her about his deteriorating marriage, that he made comments to her about how he preferred watching her take photographs rather than a male free-lance photographer the agency also used, and that he informed his male friends that he was in love with her and required her to have a "business" lunch with those friends on a trip to Minneapolis. On one occasion Schrader kissed her hand in a restaurant, and on another occasion when she was driving him home from a bar he said he wanted to make love to her.

On October 4, 1983, at a party for employees and their families after SMMPA's annual meeting, Schrader and Landwehr became involved in an argument. Kay Ross, SMMPA's secretary, overheard portions of it. Ross testified that Schrader told Landwehr several times that he loved her, Landwehr became angry, and Schrader told her that she should quit her job, stay home with her children, and get out of his life.

Pierre Heroux testified that he believed Landwehr had been under a great deal of pressure and that Schrader's termination was justified because "Phil as a senior manager in our agency had not controlled the situation for which he was responsible; had acted foolishly, had continued to pursue it, had exposed the agency to legal ramifications. And it was his responsibility to control that situation."

The hearing board issued its decision in February 1984. Judge Martin found:

11. That from July 14, 1983 until and through October 4, 1983 [Schrader] did conduct a course of sexual harassment of Mary Ellen Landwehr consisting of a marriage proposal to her and persistence in and reiteration of said proposal, of using pretexts to be together with her, and finally of his desire "to make love with her" and ultimately suggesting that if she was to continue to reject him as a suitor that she should take herself out of his life

and quit her job and return to her family.

12. That [there was] no extenuation on the part of Landwehr to justify or mitigate Schrader's conduct.

13. That the aforesaid conduct by Schrader is misconduct within the meaning of the Veterans Preference Act * * *.

Judge Martin's memorandum provides that "[t]he evidence is overwhelming to establish the misconduct," but he concluded that a 60-day unpaid suspension was more appropriate than dismissal.

Steward concurred in the findings of misconduct but concluded that the hearing board had no authority under the statute to order a suspension without pay instead of dismissal. Crowley found that Schrader did not commit misconduct, although "his conduct was inappropriate in the context of the workplace." Crowley agreed that the appropriate sanction was a 60-day suspension without pay.

SMMPA petitioned for a writ of certiorari from the district court. The district court found that there was substantial evidence to support the board's finding that Schrader's admitted conduct toward Landwehr constituted misconduct under the Veterans Preference Act, but remanded the case to the hearing board to clarify "what extenuating circumstances it relied upon in its election to fashion a new remedy" (citing *Leininger v. City of Bloomington*, 299 N.W.2d 723 (1980)).

On remand, Judge Martin and Crowley made supplemental findings of extenuating circumstances, which suggest that Landwehr was not intimidated or concerned about Schrader's conduct toward her but that her complaint to Heroux was motivated by a friendly desire to help Schrader obtain help for his drinking problem. Steward dissented from the supplemental findings and repeated his conclusion that

the hearing board had neither the statutory power to reinstate Schrader nor the expertise to make employment-related decisions. The district court affirmed the supplemental findings of extenuating circumstances and the conclusion that Schrader was entitled to keep his job subject to a 60-day unpaid suspension. SMMPA appeals.

## ISSUES

1. Does the Veterans Preference Act apply to this case?

2. Did the district court err in affirming the hearing board's decision to modify the sanction for misconduct from termination to a 60-day unpaid suspension?

## ANALYSIS

### I

■ The Veterans Preference Act prohibits public employers from discharging a veteran except for incompetency or misconduct shown after a hearing.[1] *See* § 197.46. The act does not apply to the head of a department, *see id.*, or to a veteran who voluntarily resigns, *cf. Garavalia v. City of Stillwater*, 283 Minn. 335, 168 N.W.2d 336 (1969). SMMPA argues preliminarily that Schrader is not entitled to the procedural benefits of the Veterans Preference Act in contesting his dismissal because (1) he was the head of a department and (2) he resigned voluntarily.

■ The trial court adopted the findings of a majority of the hearing board that Schrader was not the head of a department within the meaning of the Veterans Preference Act and that he did not resign voluntarily but was discharged. These findings are supported by substantial evidence. The record shows that Schrader reported to Heroux rather than the SMMPA board, that he had no authority to hire or fire office employees, and that he had no power to dictate employee salaries or promotions.

---

1. The hearing board found that Schrader's discharge was "inappropriate and inoperative," apparently because he did not receive written notice before dismissal. *Cf. Mitlyng v. Wolff*, 342 N.W.2d 120, 123 (Minn.1984) ("The hearing must come first, then the discharge.") The trial court remanded for a determination of back pay. The parties agreed, however, that Schrader was fully paid through the time of the board's order.

*See, e.g., State ex rel. Caffrey v. Metropolitan Airports Commission,* 310 Minn. 480, 246 N.W.2d 637 (1976); *Granite Falls Municipal Hospital and Manor Bd. v. State,* 291 N.W.2d 683 (Minn.1980). In addition, the circumstances surrounding his departure from SMMPA do not suggest that he voluntarily resigned but that he was forced to do so. As a veteran, Schrader was entitled to a hearing under the Veterans Preference Act.

## II

SMMPA argues that, once the board found Schrader committed misconduct, it had no authority to fashion a sanction other than dismissal.

The hearing board and the trial court relied on *Leininger v. City of Bloomington,* 299 N.W.2d 723 (Minn.1980), for the proposition that the board has the power to fashion its own sanction for misconduct. *See also City of Minneapolis by Johnson v. Singer,* 253 N.W.2d 150 (1977); *Davila v. Ramsey County Community Human Services,* 374 N.W.2d 547 (Minn.Ct.App. 1985), *pet. for review granted,* (Minn. Nov. 25, 1985). These cases are distinguishable because the review board in each case had statutory authority to modify the sanction. In *Leininger,* the supreme court held that the City of Bloomington Home Rule Charter and Merit Rule 18.4 (1976) authorized the Bloomington merit board to either "confirm the City's action or reinstate the employee 'on such terms and conditions as it sees fit' "; in *City of Minneapolis,* the supreme court found that the Minneapolis Civil Service Commission was empowered by the Minneapolis City Charter to decide for itself what penalty is justified; and in *Davila,* the court interpreted Minn.Stat.

§ 383A.29, subd. 15 (1984), as authorizing the Ramsey County Civil Service Commission to modify the discipline imposed on a veteran. These cases do not provide support for the proposition that an ad hoc hearing board, with no statutory powers, has the authority to modify the employer's decision regarding sanctions for misconduct.[2]

When an ad hoc board is appointed under the Veterans Preference Act, the board's function is to preside at the hearing and make findings as to whether the dismissal is justified for incompetency or misconduct. Once misconduct is found, the board does not have authority to modify the sanction proposed by the employer. It must sustain the employer's decision.

Schrader did not appeal the finding of misconduct. Misconduct has been defined as legal cause which "specially relates to and affects the administration of the office, * * * of a substantial nature directly affecting the rights and interests of the public." *Leininger,* 299 N.W.2d at 726 (quoting *Ekstedt v. Village of New Hope,* 292 Minn. 152, 193 N.W.2d 821 (1972)). The finding of misconduct has substantial support in the record.[3]

## DECISION

The hearing board had no authority to modify the sanction proposed by the employer. We direct the trial court to enter judgment discharging Schrader for misconduct.

Reversed.

---

2. When the trial court remanded for findings on "extenuating circumstances," it gave the board the powers allocated by statute to the State Civil Service Board. *See* Minn.Stat. § 43.24, subd. 2 (the board has the discretion to modify the appointing authority's action on grounds of extenuating circumstances). We therefore disregard the supplemental findings made to establish extenuating circumstances in this case.

3. The employer must show misconduct as that term has been defined under the Veterans Preference Act. In this case, one of the reasons for dismissal was the employer's conclusion that Schrader had opened the agency to charges of sexual harassment by Landwehr. The employer does not have to prove that Landwehr has an actionable claim for sexual harassment under Minn.Stat. § 363.01 to justify Schrader's discharge, as suggested by board member Willard Crowley.