**In the Matter of the Termination of Employment of Philip W. SCHRADER on October 5, 1983, as Director of Information at Southern Minnesota Municipal Power Agency, hereinafter referred to as S.M.M.P.A.**

**SOUTHERN MINNESOTA MUNICIPAL POWER AGENCY, Respondent,**

v.

**Philip W. SCHRADER, Appellant.**

No. C5–85–1356.

Supreme Court of Minnesota.

Oct. 24, 1986.

Rehearing Denied Nov. 21, 1986.

Robert J. Miller, Minneapolis, for appellant.

Craig A. Beck, Rochester, for respondent.

AMDAHL, Chief Justice.

We granted appellant's petition for review for the purpose of determining the scope of power of a hearing board proceeding under the Veterans Preference Act, Minn. Stat. § 197.46 (1984). The Court of Appeals held that an ad hoc hearing board proceeding under the Veterans Preference Act had no power, once it found that the employee's conduct constituted misconduct, to modify the disciplinary sanction proposed by the employer. *Southern Minnesota Municipal Power Agency v. Schrader*, 380 N.W.2d 169 (Minn.App. 1986). We reverse. We also review the hearing board's extenuating circumstances findings, and hold that these findings are not supported by substantial evidence on the record. Finally, we establish a procedure and a standard to guide a hearing board proceeding under the Veterans Preference Act.

Philip Schrader, a married man, was hired by Southern Minnesota Municipal Power Association (S.M.M.P.A.) on December 1, 1980, as its director of information. In January of 1981, Mary Ellen Landwehr, a married woman, was hired by S.M.M.P.A. as an information specialist in the information department and she began working with Schrader.

On October 5, 1983, Landwehr met with the executive director of S.M.M.P.A., Pierre Heroux, and told him that Schrader had told her that he loved her and wanted to marry her. Landwehr told Heroux that because Schrader was her boss, she was in a position with which she did not know how to cope. After meeting with Landwehr, Heroux briefly investigated the matter and then confronted Schrader about Landwehr's allegations. After Schrader admitted that he had proposed marriage to Landwehr, he was discharged from his job with S.M.M.P.A.

On November 16, 1983, Schrader made a written demand for a hearing pursuant to the Veterans Preference Act, Minn. Stat. § 197.46 (1984). Thereupon, S.M.M.P.A. served Schrader with a statement of charges. Because no established civil service board existed in the area, a three-person hearing board was formed pursuant to the Veterans Preference Act, and the hearing was held on December 20, 1983.

At the hearing, Schrader admitted that on July 14, 1983, he proposed marriage to Landwehr. He testified that her response was that there was a chance. He testified that between July 14 and October 5, 1983, he and Landwehr continued to work together and that on occasion, but infrequently, he would discuss with her his feelings of love for her. Schrader also testified that except for a single incident when he had asked her for a kiss, he had never initiated any physical contact with Landwehr. Schrader testified that during the night of October 4, 1983, following S.M.M.P.A.'s annual meeting, he and Landwehr got into an emotional shouting match during which he told her "rather forcefully to get out of my life."

Mary Ellen Landwehr testified that when Schrader asked her to marry him, she was stunned and, because she did not know what to do, she told him to go on vacation and they would talk about it when he returned. She testified further that during the next 2 months Schrader would often bring up the subject of his love for her; that he required her to accompany him on unnecessary trips of questionable business nature; that he often told her about his marital problems; that he had told his friends that he was in love with her; and that he had once kissed her hand in a restaurant. Landwehr also related that on October 2, 1983, she and her husband had retrieved Schrader from a bar and that while she was driving Schrader to a motel where he could sleep in preparation for the next day's meeting, he told her that he loved her and wanted to make love with her.

Landwehr testified that by the time of S.M.M.P.A.'s annual meeting, October 3–4, 1983, she had concluded that the situation had to be brought into the open. She testified that on the night of October 4 she told Schrader that she loved her husband and wanted to be left alone and that Schrader told her that she should quit her job and go home and be a mother. Landwehr testified that the next morning she arranged a meeting with Heroux and that at that meeting she told Heroux that she was having a problem with Schrader. She told Heroux that she thought Schrader drank too much; that Schrader had told her that he loved her and wanted to marry her; and that, because Schrader was her boss, she felt powerless.

In February of 1984, the hearing board issued its findings of fact and conclusions of law. The board found, among other things, that from July 14, 1983, through October 4, 1983, Schrader

> did conduct a course of sexual harassment of Mary Ellen Landwehr consisting of a marriage proposal to her and persistance in and reiteration of said proposal, of using pretexts to be together with her, and finally of his desire "to make love with her" and ultimately suggesting that if she was to continue [to] reject him as a suitor that she should take herself out of his life and quit her job and return to her family * * * [t]hat [there existed] no extenuation on the part of Landwehr to justify or mitigate Schrader's conduct * * * [and that] the aforesaid conduct by Schrader is misconduct within the meaning of the Veteran's Preference Act * *.

The hearing board concluded, however, that under the circumstances, discharge of Schrader was not appropriate and that the appropriate sanction was a 60–day unpaid suspension.

S.M.M.P.A. petitioned the district court to review the decision of the hearing board. On review, the district court noted that there was substantial evidence in the record to support the finding of misconduct. The district court then ordered the

matter remanded to the hearing board for a clarification of what extenuating circumstances it relied upon in electing to change Schrader's disciplinary sanction from discharge to a 60-day unpaid suspension.

On December 3, 1984, the hearing board filed its supplemental and amended findings upon remand. The board heard no additional testimony before issuing those findings. The board listed six extenuating circumstances it relied upon in electing to fashion a new remedy. Of principal importance, the board found that Schrader's conduct did not ripen into "actual sexual harassment" until the October 4, 1983, confrontation; that Landwehr was primarily concerned with Schrader's drinking problems; that Landwehr was not intimidated by Schrader's marriage proposal or his subsequent conduct; and that "the sexual harassment was not aggravated."

On June 19, 1985, the district court filed its order affirming the hearing board's December 3, 1984, supplemental and amended findings. The district court noted that there was nothing wrong with the fact that some of the supplemental and amended findings were inconsistent with the board's original findings, and it affirmed the board's February 1984 conclusion that Schrader was still an employee of S.M.M. P.A., subject to a 60-day unpaid suspension.

On appeal, the Court of Appeals reversed the district court, holding that once the hearing board found misconduct, the board had no authority to modify the sanction proposed by the employer. This appeal followed.

The question of the scope of power of a hearing board proceeding under the Veterans Preference Act has been before this court before. However, our decisions in those cases have not entirely resolved the matter. We granted the employee's petition for further review for the purpose of settling this question.

The Veterans Preference Act, Minn.Stat. § 197.46 (1984), prohibits a public employer from removing an honorably discharged veteran from employment "except for in-

competency or misconduct shown after a hearing * * *." Minn.Stat. § 197.46. The Act provides for a right to a hearing, tells how the right is to be invoked, describes the body before whom the hearing is to be held, and provides for appeal from the decision of the hearing board. The Act is silent on the question of the scope of authority of a board proceeding under the Act.

This court first had an opportunity to address the question of the scope of power of a veterans preference hearing board in *Leininger v. City of Bloomington*, 299 N.W.2d 723 (Minn.1980). In *Leininger*, pursuant to the Act, a hearing was held before an established board, the Bloomington Merit Service Board. The board in *Leininger* concluded that a section of the City of Bloomington Home Rule Charter and the Merit System Rules restricted the board to either sustaining or not sustaining the City's dismissal of Leininger. *Id.* at 728–729. In reviewing this decision, we stated that we do not find that section 197.46 contemplates "that the commission serve merely as a body which reviews findings by appointing officers or department heads." *Leininger*, 299 N.W.2d at 729. We stated that because the pertinent section of the Bloomington Home Rule Charter and the Merit System Rules conflicted with a particular state civil service rule allowing the state civil service board to formulate alternative disciplinary sanctions under Minn.Stat. § 197.455 (1984), the Home Rule Charter and Merit Rules were void to the extent of such inconsistency. We then found "that Minn.Stat. §§ 43.-24, .30, 197.455 and .46, read together, impliedly authorize the Bloomington Merit Board to fashion a remedy other than that determined by the City, if the evidence presents extenuating circumstances." *Leininger*, 299 N.W.2d at 729.

In *AFSCME Council 96 v. Arrowhead Regional Corrections Board*, 356 N.W.2d 295 (Minn.1984), we again commented on the scope of power of a hearing board sitting under the Act. Like *Leininger*, the board in *AFSCME* was an established

board, the St. Louis County Civil Service Commission. We stated that the—

> Veteran's Preference Hearing Board has the same power to fashion alternative remedies (i.e., progressive discipline) as the arbitrator does. * * * [Nothing] in section 197.46 contemplate[s] that the Veteran's Preference Hearing Board serve merely as a body that reviews findings and approves or disapproves recommendations, but that its function is also to decide for itself what penalty, if any, is justified.

*AFSCME*, 356 N.W.2d at 298.

Our most recent decision on this question was in *Ramsey County Community Human Services Dept. v. Davila*, 387 N.W.2d 421 (Minn.1986). As in *Leininger* and *AFSCME*, *Davila* involved an established commission, the Ramsey County Civil Service Commission, sitting as a veterans preference board under section 197.46. In *Davila*, the county civil service code specifically gave the Commission the power to modify the employer's disciplinary sanction. We held that because no provision of the Ramsey County Civil Service Code concerning the power to modify a disciplinary sanction is inconsistent with any state civil service rule, the Ramsey County Civil Service Code controls.

■ This case involves an ad hoc hearing board convened for the sole purpose of conducting a hearing pursuant to the Act, and guided solely by the Act. The issue is the scope of power of such a board. Our previous decisions on the scope of power of a veterans preference hearing board have all involved established hearing boards, and the power to modify a disciplinary sanction was found to come from the statutes and rules governing these boards. We hold that an ad hoc hearing board, sitting pursuant to the Veterans Preference Act, Minn. Stat. § 197.46 (1984), has the same authority as an established board to modify a disciplinary sanction. The rule is that in all hearings held pursuant to the Veterans Preference Act, the hearing board, whether it be an established board or an ad hoc board, has the power to fashion a remedy other than dismissal if the evidence presents extenuating circumstances.

■ In reviewing the adequacy of findings of the hearing board, we seek to determine whether the findings are supported by substantial evidence on the whole record. *See Minnesota Power & Light Co. v. Minnesota Pub. Utilities Comm'n*, 342 N.W.2d 324, 332 (Minn.1983). In this case, following the hearing, the hearing board made extensive and detailed findings of fact. On review, the district court noted that there was substantial evidence in the record to support the hearing board's finding that Schrader's conduct constituted misconduct. We agree. The district court then remanded to the hearing board for a clarification of what extenuating circumstances it relied upon in electing to fashion a new remedy. On remand, the hearing board issued supplemental and amended findings listing six extenuating circumstances it relied upon in electing to fashion a new remedy. We find that the hearing board's supplemental and amended findings are not supported by substantial evidence. Accordingly, we find that there is no support for the hearing board's modification of the disciplinary sanction. Absent support, the hearing board's decision to change the sanction from discharge to a 60–day unpaid suspension constituted an abuse of discretion.

■ Under the Veterans Preference Act, the following procedure is to be followed. When a public employer wishes to remove a veteran from his position of employment, the employer must notify the veteran, in writing, of such intent, of the charges against the veteran, and of the veteran's right to request a veterans preference hearing within 60 days of receipt of the written notice. After receipt of the written notice, the veteran has 60 days to submit a written request for a hearing. Such request is to be made to the employer.

■ In conducting a veterans preference hearing, the task of the hearing board is twofold: first, to determine whether the employer has acted reasonably; second, to

determine whether extenuating circumstances exist justifying a modification in the disciplinary sanction.

■ With respect to the board's responsibility to determine whether the employer acted reasonably, the burden of proof is on the employer. Requiring the employer to show that its conduct is reasonable, as opposed to requiring the veteran to show an abuse of discretion, is consistent with the legislative intent of the Act: "veterans [are to] enjoy security in public employment, protected from 'the ravages and insecurity of a political spoils system.' [Citation omitted.]" *AFSCME*, 356 N.W.2d at 298. In determining whether the employer has acted reasonably, the board is to be guided by such considerations as the veteran's conduct, the effect upon the workplace and work environment, and the effect upon the veteran's competency and fitness for the job. *See generally* Black's Law Dictionary 1138 (rev. 5th ed. 1979) ("Reasonable: Fair, proper, just, moderate, suitable under the circumstances.").

■ With respect to the board's power to modify the disciplinary sanction, if the employer's action is reasonable, then the board can modify the sanction only if it finds extenuating circumstances. The power of the hearing board to modify the disciplinary sanction is not dependent upon a determination that the employer acted unreasonably; it is dependent upon a finding of extenuating circumstances supported by substantial evidence in the record. Recognition that the hearing board has the power to modify the disciplinary sanction, regardless of the reasonableness of the employer's action, is consistent with the notion that a veteran be granted a meaningful hearing.

■ Following the hearing, the hearing board is to issue a written statement of its findings of fact and conclusions of law. The hearing board is to include in its report a detailed listing of those extenuating circumstances it relied upon in modifying the disciplinary sanction if, in fact, the board concludes that a modification is proper.

■ Upon issuance of the hearing board's report, both the veteran and the employer may appeal to the district court from the decision of the hearing board. The Veterans Preference Act, enacted to control the unfettered discretion of public employers toward veterans, did not intend to place total discretionary power in the veterans preference hearing board. Thus, in reviewing the actions of the hearing board, the reviewing court is to determine whether or not the hearing board has abused its discretion.

We reverse the decision of the Court of Appeals and hold that a hearing board, proceeding under the Veterans Preference Act, has the power to modify the employer's disciplinary sanction upon a finding of extenuating circumstances. Upon our reading of the record, we find that the employer acted reasonably and that the extenuating circumstances found by the hearing board are not supported by substantial evidence. The employer's recommended discipline of discharge is reinstated.

Affirmed in part, reversed in part.

SIMONETT, J., concurs specially.

SIMONETT, Justice (concurring specially).

"[I]f the employer's action is reasonable," says the majority opinion, "then the board can modify the sanction only if it finds extenuating circumstances." This may suggest the public employer, in acting reasonably, does not consider extenuating circumstances. This is not, however, what I understand the majority opinion to be saying.

Presumably, in choosing to discharge an employee rather than to impose some lesser discipline, the public employer has duly considered and weighed in the balance any circumstances which either extenuate or enhance the seriousness of the employee's misconduct or incompetency.

Only if the public employer seeks to remove an employee by discharge or demotion is a Veterans Preference Board hear-

ing activated, and the public employer must then prove its case to the Board. In making its decision, the Board makes findings of fact. Based on these findings, which cover not only the specific misconduct or incompetency but also any extenuating and enhancing circumstances, the Board then determines the reasonableness of the proposed sanction. Or to put it another way, the Board considers whether the public employer's choice of the sanction of removal is a reasonable exercise of the public employer's discretion.

If the Board concludes discharge or demotion was not reasonable, the Board may set the sanction aside. May the Board then fix a lesser discipline or must it remand to the public employer to do so? The question is not free from doubt. Under our prior case law, however, it is settled that an established Veterans Preference Board has the power to modify sanctions; in the interests of consistency, we should hold, as we do, that an ad hoc board has the same power.

On judicial review, the court should review the findings of fact to determine if they are supported by substantial evidence, *see State ex rel. Jensen v. Civil Service Commission,* 268 Minn. 536, 538, 130 N.W.2d 143, 146 (1964), *cert. denied,* 380 U.S. 943, 85 S.Ct. 1023, 13 L.Ed.2d 962 (1965); and the reasonableness of the Board's imposed sanction should be reviewed under an abuse of discretion standard.

In this case, misconduct was established by substantial evidence. The Board's supplemental findings seeking belatedly to characterize the sexual harrassment as nonserious do not have substantial evidentiary support. Considering the seriousness of the misconduct, its adverse impact on the workplace and on a coemployee, its potential for civil rights claims against the employer, and the lack of any counterbalancing extenuating circumstances, the public employer's discharge of the veteran was reasonable. Consequently, the discharge must be allowed to stand.