STATE of Minnesota, ex rel., John LAUX, individually and in his capacity as Chief of the Police Department of the City of Minneapolis, Minnesota, relator, Appellant,

v.

Hugh M. GALLAGHER, et al., Lower Court Respondents,

Kent B. Warnberg, Respondent.

No. C5–94–1610.

Court of Appeals of Minnesota.

Feb. 7, 1995.

Surell Brady, City Atty., Peter W. Ginder, Asst. City Atty., Minneapolis, for appellant.

**160**

Ann E. Walther, Gregg M. Corwin & Associates, St. Louis Park, for respondent.

Considered and decided by KLAPHAKE, P.J., LANSING and AMUNDSON, JJ.

## OPINION

AMUNDSON, Judge.

The state challenges the district court's judgment affirming the decision of the Minneapolis Civil Service Commission, sitting as a veterans preference board pursuant to Minn.Stat. § 197.46 (1992). The state argues that (1) the board did not provide a detailed listing of "extenuating circumstances" to support its modification of the police department's recommendation that respondent Kent Warnberg be discharged, and (2) the board abused its discretion in modifying the police department's recommendation. We affirm.

## FACTS

Respondent Kent Warnberg has been a police officer with the Minneapolis Police Department (department) since February 1988. He is an honorably discharged veteran and a member of the Minnesota National Guard.

In July 1992, Warnberg was on annual training with his National Guard unit in Wisconsin. A female member of Warnberg's unit claimed that he sexually assaulted her during the time he was in Wisconsin. The administrative law judge noted that in the criminal complaint:

> the woman claimed that on July 23, 1992, she had been to a company party, then to the NCO club, and then to the motor pool. She alleged that while at the motor pool, Warnberg stopped to have a drink and wanted to talk with her, that she left to speak with him, that he indicated that he would take her to her barracks but instead drove past the barracks, and attempted to "cuddle" with her, but that she requested to be taken back to her barracks which Warnberg did not do. She further alleged that Warnberg drove to a motel in nearby Tomah, Wisconsin, attempted to get a room but none was available, told her they were going to another motel down the

road, that she again requested to be taken back to her barracks and that she then became sick and asked that he pull over. According to the complaint, when she got out of the vehicle and began vomiting, Warnberg came up behind her, began rubbing her back, placed his hand underneath her sweater, undid her bra, fondled her breasts while she was vomiting and that she tried to push him away. She alleged that she then returned to the vehicle at which time Warnberg undid her pants, inserted his finger inside her vagina, forcibly massaged her vagina without her consent and fondled her breasts while she continually requested that he return to the barracks and attempted to push him away. She alleged that she finally curled up in a ball so that Warnberg could not touch her and that he eventually took her back to her barracks.

The department was notified on July 29, 1992 of the charges against Warnberg and Warnberg was placed on administrative duties.

Warnberg was charged with two counts of second degree sexual assault for having sexual contact with another person without that person's consent by use of threat of force or violence (a class "C" felony in Wisconsin, for which up to a $10,000 fine and 10 years imprisonment may be imposed), false imprisonment (a class "E" felony in Wisconsin, for which up to a $10,000 fine and 2 years imprisonment may be imposed), and fourth degree sexual assault for sexual contact with a person without that person's consent (a class "A" misdemeanor in Wisconsin, for which up to a $10,000 fine and 9 months imprisonment may be imposed).

The jury found Warnberg not guilty on the three felony counts, but guilty on the misdemeanor fourth degree sexual assault count. The court sentenced Warnberg to six months in the county jail. Warnberg appealed and that appeal is still pending.

Following a disciplinary hearing, Chief John Laux signed a Recommendation for Discharge form notifying Warnberg of his termination and his rights as a veteran. Warnberg invoked his rights to a hearing under the Veterans Preference Act, Minn.

Stat. § 197.46. After the hearing, the ALJ recommended that the finding of misconduct be sustained but that the discipline be reduced to a 60–day suspension.

The state appealed to the Civil Service Commission, sitting as a veterans preference board (board). The board recommended a 90–day suspension. The district court affirmed the board's decision and this appeal followed.

## ISSUES

1. Did the board include a "detailed listing of extenuating circumstances" in its report?

2. Did the board abuse its discretion in modifying the police department's recommendation that Warnberg be discharged to a 90–day suspension?

## ANALYSIS

▆ Since Warnberg is a veteran, the proceedings were conducted pursuant to the Veterans Preference Act, Minn.Stat. § 197.46. Under the Veterans Preference Act, when a public employer wishes to discharge a veteran, certain procedures must be followed. The public employer must notify the veteran in writing of its intent to discharge the veteran, the charges against the veteran, and the veteran's right to request a veterans preference hearing within 60 days of the receipt of the written notice. *In re Schrader*, 394 N.W.2d 796, 801 (Minn.1986). After receipt of the written notice, the veteran has 60 days to submit a written request for a hearing to the employer. *Id.*

▆ In conducting a veterans preference hearing, the task of the hearing board [1] is twofold: first, to determine whether the employer has acted reasonably; and second, to determine whether extenuating circumstances exist justifying modification of the disciplinary sanction. *Id.* at 801–02. If the board finds that the employer's action was reasonable, then the board can modify the sanction only if it finds "extenuating circumstances." *Id.* at 802. The board's power to

modify the disciplinary sanction is not dependent upon a determination that the employer acted unreasonably—it is dependent on a finding of extenuating circumstances supported by substantial evidence in the record. *Id.*

▆ Following the hearing, the board is to issue a written statement of its findings of fact and conclusions of law. *Id.* The board is to include in its report "a detailed listing of those extenuating circumstances it relied upon in modifying the disciplinary sanction if \* \* \* the board concludes that a modification is proper." *Id.* Upon issuance of the board's report, both the veteran and the employer may appeal to the district court. *Id.*

▆ This court does not accord any deference to the district court's review of the board. *See Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn.1977). In reviewing the adequacy of findings of the hearing board, this court is to determine whether the findings are supported by substantial evidence on the whole record. *See Schrader*, 394 N.W.2d at 801. In reviewing the actions of the hearing board, this court is to determine whether or not the hearing board abused its discretion. *Id.*

The reasonableness of the city's action is not an issue in this case. Thus, we consider whether (1) the board included a detailed listing of extenuating circumstances in its report, and (2) whether the board abused its discretion in modifying the sanction.

## I. *Extenuating Circumstances*

▆ The state argues that the board did not provide a detailed listing of extenuating circumstances.

The board included the following listing of extenuating circumstances:

> The Administrative Law Judge also found that several Minneapolis police officers who have pled guilty to or have been found guilty of misdemeanor charges have not

---

1. An ad hoc hearing board convened solely for the purpose of conducting a hearing pursuant to the act, like the one in this case, has the same authority as an established board to modify a disciplinary sanction. *Schrader*, 394 N.W.2d at 801.

been terminated. Some of those have been convicted of domestic abuse or DWI.

The public has a right to expect a high standard of conduct from its police officers, who occupy a unique position of trust. Warnberg's conduct dishonored him and the Department and it is necessary that serious disciplinary action be taken to demonstrate to the public, to Warnberg and to other officers that such conduct will not be tolerated. Yet, if the Department has not discharged officers in the past who have been convicted of misdemeanor offenses, is the Department acting in an even-handed manner if it requires discharge in this case?

Further, this matter is Warnberg's only incident of misconduct. Indeed, this Commission reviewed affidavits and other evidence submitted at the hearing which attested to the employee's strong record of performance as a police officer. Particularly compelling were affidavits offered by two female officers who have supervised Warnberg, attesting to his respectful and professional demeanor with women as police officers, crime victims, suspects and members of the public. The incident in Wisconsin which gave rise to the misdemeanor conviction does not appear to be indicative of his ability to work with women professionally and respectfully, whether as supervisors, peers or members of the public.

Discharging Warnberg, given the facts of this case, is not consistent with prior disciplinary decisions of the Department, and is consequently too severe a discipline.

In addition, the board accepted the ALJ's findings of fact and conclusions of law. The ALJ made the following findings relating to extenuating circumstances:

14. Warnberg's performance evaluations from 1989 through 1991 show him to be a "superior officer" with continually improving evaluations. His overall performance scores were 77% for 1989, 88% for 1990, and 90% for 1991. Chief Laux testified that the performance evaluations were not inflated ratings and indicated Warnberg to be a "superior" officer.

15. * * * Lieutenant Thomas Hanson, who recently retired, was Warnberg's supervisor at the Fourth Precinct from April 30, 1989 until 1992. He considered Warnberg a "fine officer" whom he rated as above-average and who was one of only a handful of officers about whom Hanson never received a citizen complaint. In his observation, Warnberg got along well with other officers and never had any problems with female citizens or officers.

16. Sergeant Sharon Lubinski was Warnberg's direct supervisor at the Fourth Precinct from May 1992 to July 1992. She found him to represent the Department professionally and with respect for all citizens and to be respectful and professional in his treatment of women, both citizens and fellow police officers. In her opinion, Warnberg was and will continue to be a credit to the Department as a police officer. Ex. 3.

17. Lieutenant Susan M. Piontek is the supervisor of the Research and Development Division, and was Warnberg's supervisor from August 1992 through May 1993. She found him to be respectful of herself and other employees in the division, the majority of whom are women, and to be well-liked and well respected by those employees.

18. Sergeant Thomas J. Stoeke was Warnberg's partner for two years in the Fourth Precinct, and observed Warnberg to be very good with citizens, very courteous with suspects, and always concerned and sensitive when dealing with female victims. In his opinion, Warnberg's conviction would not detract from his ability to be a police officer and, if reinstated, Warnberg would be an asset to the Department. He acknowledged that the conviction will have a negative impact on some citizens and some victims, and will "taint" the Department.

*     *     *     *     *     *

20. Several Minneapolis police officers who have pled guilty to or have been found guilty of misdemeanor charges have not been terminated. Some of those have been convicted of domestic abuse or DWI. One officer has been allowed to continue

working despite a determination that he had engaged in sexual harassment.

The state does not seem to challenge the evidence supporting the findings—just the amount of detail.[2]

The Veterans Preference Act does not define the term "detailed." The case law does not define this term either. We need not determine the precise contours of the term since, however, we conclude that the board's findings, especially when combined with the ALJ's findings, are "detailed" within the common usage of the term. *See* American Heritage Dictionary 508 (3d ed. 1992) (defining "detailed" as "characterized by abundant use of detail or thoroughness of treatment").

## II. *Modification of Recommended Sanction*

■ The state contends that, absent evidence that the facts underlying the convictions of the other officers were substantially similar to this case, it was an abuse of discretion for the board to modify the recommended discipline.

The state correctly notes that Warnberg's six-month sentence was equivalent to a sentence for a gross misdemeanor in Minnesota. *See* Minn.Stat. § 609.02 (1994) (misdemeanor is a crime for which a sentence of 90 days or less may be imposed; felony is a crime for which a sentence of more than one year may be imposed; gross misdemeanor is any crime that is not a felony or misdemeanor).

The state argues it was improper for the board to compare Warnberg's "gross misdemeanor" to misdemeanor violations committed by other officers. Although more detail in the board's report regarding the other officers' convictions would have been desirable, the failure to provide such detail is not reversible error.

Our affirmance of the district court should not be construed as approval of Warnberg's behavior. Such conduct can only undermine

the faith that the people of the city of Minneapolis have in their police force. In addition, we find it alarming that Warnberg's misconduct occurred in connection with his duties as a member of another body that should seek to uphold the public trust—the National Guard. As an appellate court, however, our role under the Veterans Preference Act is limited.

■ In a case like this one, it is important to keep in mind the salutary effects of the adoption of a Veterans Preference Act and the civil service system in general. Although in individual cases, such a system may seem to shield wrongdoers, the civil service system "rests on the principle of application of the merit system instead of the spoils system in the matter of appointment and tenure of office." *Anderson v. City of St. Paul*, 308 Minn. 121, 124, 241 N.W.2d 86, 88 (1976) (quoting 15 Am.Jur.2d, Civil Service § 1); *see also Yaeger v. Giguerre*, 222 Minn. 41, 43, 23 N.W.2d 22, 24 (1946) (purpose of civil service act is "to permit municipalities to remove their police department employees from the debilitating influence of politics"). The purpose of the civil service law is to ensure the continuance in public employment of employees who prove faithful and competent, regardless of their political affiliation. *State ex rel. Coduti v. Hauser*, 219 Minn. 297, 305, 17 N.W.2d 504, 508 (1945). Thus, such a system ensures that the public will be benefitted by having city employees chosen and retained on the basis of merit rather than the vagaries of municipal politics.

■ We note that, even though our role in a case such as this is a limited one, the role of the board need not be. The board is free to adopt standards that are appropriate for ensuring both the rights of city employees as well as public confidence in police officers. In particular, the board may explicitly define "extenuating circumstances" to give guidance in disciplinary cases.[3] Un-

---

2. Even if the state were to challenge the evidence supporting the findings, that challenge would fail. The ALJ's findings and the board's report are clearly supported by substantial evidence— the testimony at the hearing before the ALJ and the affidavits that Warnberg submitted.

3. Our holding should not be construed to mean that a reviewing court is always obligated to affirm when a board provides a detailed listing of extenuating circumstances, and the board's findings are supported by substantial evidence. Cases may arise in which a reviewing court may

doubtedly, that definition will change with time. Thus, the board need not be exclusively bound by earlier decisions that, in light of later experience, evolving community standards, and the felt necessities of the times seem inappropriate.

### DECISION

The board provided a detailed listing of extenuating circumstances. The Commission did not abuse its discretion in modifying the disciplinary sanction.

**Affirmed.**

conclude that what the board characterizes as "extenuating circumstances" are insufficient as a matter of law to support a modification of a disciplinary sanction under the Veterans Preference Act.

