Thomas S. WAGNER, Respondent,

v.

MINNEAPOLIS PUBLIC SCHOOLS, SPECIAL SCHOOL DISTRICT NO. 1, Appellant.

No. CX–96–1347.

Supreme Court of Minnesota.

Oct. 23, 1997.

Rider, Bennett, Egan & Arundel, LLP, Eric J. Magnuson, J. Dennis O'Brien, Karen A. Janisch, Minneapolis, for appellant.

Gant Law Offices, Jesse Gant, III, Minneapolis, for respondent.

## OPINION

STRINGER, Justice.

Thomas S. Wagner (Wagner) was employed by the Minneapolis Public Schools (School District) as a custodian assigned to the Webster Open Elementary School when he engaged in conduct that the school district determined justified the termination of his employment. We consider here whether the record developed before the Administrative Law Judge (ALJ) contained sufficient evidence of extenuating circumstances for the Minneapolis Civil Service Commission, on review, to modify the decision of the school district that Wagner should be discharged. The Administrative Law Judge's determination that there was no evidence of extenuating circumstances was rejected by the Civil Service Commission, although it accepted the ALJ's other findings, and the Civil Service Commission concluded that there were several extenuating circumstances rendering anything more than a 90 day employment suspension unjustified. On the school district's appeal to the district court, the ALJ's finding of no extenuating circumstances was reinstated. The district court conclusion was in turn reversed by the court of appeals. After a thorough review of the record and proceedings, we agree with the ALJ and the district court that there is no substantial evidence of extenuating circumstances. We therefore reverse the court of appeals.

In March 1989, Wagner began working as a janitor engineer for Special School District No. 1 of the Minneapolis Public Schools. He performed his duties satisfactorily for the next few years, but in mid-May, 1994, when he was employed at Webster Open Elementary School, Wagner engaged in several acts of misconduct that led the school district to seek his discharge. The misconduct arose because Wagner often allowed students to remain in the school building after hours. Specifically, after school on May 15, Wagner offered access to the school roof through the janitorial closet to two sixth-grade girls, A.C. and S.N. They initially hesitated, but he told them to lie and say that they were looking for tennis balls if anyone caught them. The children climbed the stairs, unattended, and explored the roof, an area unprotected by fencing and of a height that a fall could cause serious injury or death.

On another occasion, A.C. and her fifth-grade sister, J.C., were walking around the school and entered the dark gym after hours. When Wagner discovered them, the children started to run. Wagner grabbed the children and began twirling them. A.C. complained that it was hurting and asked Wagner to stop, but he refused. She broke loose, but Wagner dropped her sister, J.C., on the hard floor.

The record also indicates that on another occasion, Wagner gave money to A.C. and J.C. and their friends when they helped him with his work.

J.B., a fourth-grader, testified that on May 17 eight children played flashlight tag with Wagner around the darkened school for about an hour. At one point Wagner hid under a teacher's desk with J.B. and S.N., which made S.N. uncomfortable. After the game, Wagner scared and hurt J.B. when he grabbed her by the arms and picked her up off the ground. On May 18, Wagner participated in a water fight with J.C., A.C., A.N., S.N. and J.B., chasing them through the building and throwing cups of water.

The misconduct came to the attention of the school district after a parent complained about Wagner's conduct. On May 17, Mary Melas, J.B.'s mother, learned of the after

hours activities in the building. Melas told J.B. not to be in the building after hours, but J.B. returned to play in the building the next day, May 18. After 5 o'clock on May 18, Melas went to the school looking for her daughter and found all the doors locked. Melas thought she saw a shadow inside and she pounded on the window and screamed. There was no response from inside, so she went home and called the police. The children opened the doors upon seeing the police and when Melas returned the children were outside. The next day Melas complained to the assistant principal at Webster school.

The school's assistant principal investigated the incidents and referred the matter to Barbara Doyle, administrator for nonlicensed personnel. Doyle immediately suspended Wagner pending further investigation. As part of the school district's investigation, a child protection counselor interviewed one of the students and concluded that because of the harmful nature of Wagner's conduct he should not be in contact with children. During the investigation, the St. Louis Park police also informed the school district that Wagner had prior criminal convictions for trespassing, burglary, and invasion of privacy and that Wagner was a suspect in several rape cases. The school district recommended discharging Wagner for misconduct, specifying inappropriate conduct with students, inappropriate sexual contact with women (based on the rape allegations), and prior criminal behavior. Allowing the children on the roof violated the school safety rules and the school district was concerned about the "boundary issues and the * * * inappropriate interaction with children."

Upon the school district's recommendation of discharge, Wagner requested and received a veterans preference hearing under the Veterans Preference Act, Minn.Stat. § 197.46. The Act provides that no covered veteran may be discharged from public employment "except for incompetency or misconduct shown after a hearing * * *." Minn.Stat. § 197.46. The purpose of the hearing is to determine if the employer acted reasonably and if any extenuating circumstances justify modification of the sanction. *In re Schrader*, 394 N.W.2d 796, 801–02 (Minn.1986). The hearing requested by Wagner extended over a period of three days, the ALJ heard testimony from twenty-one witnesses, including students, teachers, school administrators, Wagner's supervisors, and Wagner himself, and Wagner and the school district were both represented by counsel. The Administrative Law Judge issued her findings of fact and conclusions of law, and recommended that Wagner be discharged. She concluded that the inappropriate behavior with the children constituted misconduct that justified discharge and that no extenuating circumstances existed. The ALJ also found that the prior convictions would not justify discharge and that the allegations of rape were unsubstantiated.

The ALJ submitted the findings, conclusions, and recommendation to the Minneapolis Civil Service Commission, sitting as a Veterans Preference Board.[1] The commission has the power to modify the disciplinary sanction of the hearing examiner, with or without modifications to the findings and conclusions. *Schrader*, at 801. In addition, the commission "has the power to fashion a remedy other that dismissal if the evidence presents extenuating circumstances." *Id.*

The Civil Service Commission, based on the record developed before the ALJ, concluded that discharge was inappropriate because of the following extenuating circumstances: (1) Wagner was a good employee with an excellent work record, (2) this was his first disciplinary incident, (3) no rules existed governing the interaction of employees and students, (4) other school employees had engaged in neglectful acts and were not disciplined, and (5) the school district's recommendation of discharge was based in part on Wagner's prior criminal convictions and unproven allegations of rape. The commission reduced the sanction from discharge to a 90 day suspension.

1. The Veterans Preference Act provides that "[i]n all governmental subdivisions having an established civil service board or commission, or merit system authority, such hearing for removal or discharge shall be held before such civil service board or commission or merit system authority." Minn.Stat. § 197.46 (1996).

On appeal, the district court examined each of the commission's extenuating circumstances and held that the commission had abused its discretion in that none of the extenuating circumstances found by the commission were supported by substantial evidence. On further appeal to the court of appeals, the court examined each of the commission's extenuating circumstances and reversed, finding sufficient supporting evidence in the record.

Our review is to determine whether the findings of the commission are supported by substantial evidence. *Schrader,* at 801. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 825 (Minn.1977). Since the commission accepted all findings of the ALJ except finding 12 that there were no extenuating circumstances, our focus will be on the evidence to support the commission's conclusion that there were extenuating circumstances making a sanction of more than a 90 day suspension unjustified.

■ The first extenuating circumstance noted by the commission was that Wagner was a good employee with an excellent work record, had been recommended for promotion, and was a good role model for children. There is no dispute that Wagner fulfilled his cleaning duties well, but there is little evidence to support the claim that he was a good role model for children. Rosemary Redmon, a teacher at the school, submitted a favorable letter of support but on cross-examination, Redmon admitted that she was not aware that Wagner had given the children money to help him with his work, that he played flashlight tag, that Wagner had invited children on the roof, or that he told the children to lie if asked why they were on the school roof. She testified that knowing those facts changed her opinion. Two other witnesses, Phirun Fricke and Lee Fabel, both teachers at the school, added little to support the claim that Wagner was a good role model. Fricke testified that Wagner was "patient, kind and respectful to students." Fabel testified only that Wagner conscientiously performed his cleaning responsibilities and that he was a "diligent" and "hard worker." We believe the district court correctly evaluated this evidence in its conclusion that it was not substantial and could not be the basis for an extenuating circumstance to justify a reduced sanction.

■ The second extenuating circumstance found by the commission was that Wagner had no disciplinary record and should have been reprimanded in accordance with the progressive discipline standard of Civil Service Commission Rule 11.04.[2] The commission also concluded that, although Wagner's conduct warranted discipline, it was not gross or repeated conduct or severe initial misconduct and does not require discharge. We disagree. In an elementary school setting where his conduct directly affects young children, Wagner's numerous acts of misconduct constituted gross and repeated misconduct under Civil Service Rule 11.04. It was sufficiently serious to warrant immediate discharge.

■ The commission's third extenuating circumstance was that in the absence of rules governing proper staff interaction with children, the discharge sanction is too harsh. Several school employees testified however, that it is common sense that children should not be allowed on the roof of the school, janitors should not play flashlight tag with the children in the darkened school building after hours or have water fights with the children, and that physically handling and hurting the children is not appropriate. We agree with the district court that this extenuating circumstance "misses the point"[3]—the

2. Civil Service Commission Rule 11.04 *Types of Disciplinary Actions* states that "[t]he principle of progressive discipline should be applied when repeated action is necessary" and the steps of discipline are outlined: warning, written reprimand, suspension, demotion, and discharge. The rule states that "[d]ischarge of an employee is appropriate for persistent substandard performance, gross or repeated misconduct, or severe initial misconduct."

3. The district court found that "[t]he board's third extenuating circumstance, that the school had no rule regarding staff interaction with students, misses the point. Other employees who testified exhibited no confusion as to how to conduct themselves properly with students even

civil service rules relating to safety and physical abuse were "not so vague as to invalidate the school's choice of disciplinary sanction."

■ The commission's fourth extenuating circumstance was that other employees engaged in neglectful acts without being disciplined or discharged. The commission based this circumstance on testimony regarding a teacher who lost his temper with one student and grabbed the student's arm; a teacher who had played games with her students, and two teachers who saw the children Wagner invited to go onto the roof but failed to take action to compel the students back into the school. We agree with the district court that these alleged similar acts were in fact so dissimilar as to provide no useful comparison.

■ The fifth and last extenuating circumstance found by the commission was that the recommendation of discharge was based in part on unproven allegations of rape and Wagner's prior criminal convictions. At the hearing before the ALJ, Doyle testified however that the school district suspended Wagner immediately upon learning of the misconduct involving the students—before learning anything from the police about Wagner's criminal history. Doyle also testified that if she had not uncovered any of the facts concerning the prior criminal convictions or rape allegations, that her recommendation of discharge "[p]robably would have been the same." Although the school district's termination letter listed inappropriate conduct with women and prior criminal behavior in addition to inappropriate conduct with students, Doyle testified that the "major consideration was the inappropriateness with the children." The ALJ found Doyle's testimony credible and concluded that the inappropriate interactions with the children were sufficient misconduct for discharge.[4] We find no reason to discredit this testimony and conclude

that the evidence that the school district's action in discharging Wagner was based on suspicions of criminal conduct was speculative and not supported by substantial evidence.

None of the extenuating circumstances that the commission relied on is supported by substantial evidence, and we therefore conclude that the civil service commission abused its discretion in modifying the ALJ's sanction without sufficient evidentiary support in the record. We reverse the court of appeals and affirm the order of the district court reinstating the discharge of Wagner.

---

in light of the fact that (admittedly) no written policy was available to them."

4. The district court stated:
    The board's fifth "extenuating circumstance" (which is more accurately characterized as an aspersion upon [the ALJ's] reasoning as a whole) remains somewhat of a mystery. There is no evidence that [the ALJ] upheld the employer's decision to discharge Mr. Wagner

upon consideration of impermissible factors, such as unproven allegations of rape. The record is devoid of support for the proposition that either the employer or the administrative law judge attempted to fashion a disciplinary outcome predicated upon Mr. Wagner's two convictions which predate his employment (and which he may have disclosed at the time he was hired).